## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**RYAN CHRISTOPHER CHEATHAM,**

     **Plaintiff,**

     **v.**                              **CASE NO. 25-3091-JWL**

**JESSE HOWES, et al.,**

     **Defendants.**

### MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Ryan Christopher Cheatham is hereby required to show good cause, in writing to the undersigned, why various claims and defendants should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein. Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

## I.  Nature of the Matter before the Court

Plaintiff brings this pro se civil rights case under 42 U.S.C. § 1983. Although Plaintiff is currently in custody at the Larned State Correctional Facility in Larned, Kansas ("LSCF"), his claims are based on his incarceration at the Lansing Correctional Facility in Lansing, Kansas ("LCF").

Plaintiff alleges in his Complaint that on February 22, 2025, he was placed on crisis level and was placed in cell with another inmate that was on crisis level. (Doc. 1, at 4.) Plaintiff alleges that both he and the other inmate had no clothes on, and the other inmate was a sex offender. *Id*. Plaintiff alleges that he contacted the PREA line and no one came to speak to him. *Id*. On March 22, 2025, Plaintiff sent a grievance on the matter to the Secretary of Corrections. *Id*. at 9.

Plaintiff alleges that on February 22, 2025, he was placed in cell that contained ash and fumes due to a fire that a prior inmate had started in the cell. *Id*. at 4. Plaintiff claims that there were ashes all over the bed and walls and his request for cleaning supplies was denied for days. *Id*. at 4–5. He acknowledges that eventually he received a Styrofoam cup of cleaner. *Id*. at 5. He claims that LCF is short-staffed and they do not pass out cleaning supplies on a regular basis. *Id*. Plaintiff alleges that on February 22, 2025, he filed an emergency grievance regarding his "inhumane" living conditions at LCF. *Id*. Plaintiff claims that the grievance was never answered. *Id*.

Plaintiff alleges that segregation cells do not have emergency intercoms in the cells, and the only way to request help is to press a button that causes a light to show on the inmate's door. *Id*. Plaintiff alleges that staff are slow to respond, if at all. *Id*.

Plaintiff alleges that on March 4, 2025, he filed an emergency grievance based on him not getting yard for a month. *Id*. at 6. Plaintiff alleges that this falls within the situations warranting an "emergency grievance," and claims that his attempts to exhaust his administrative remedies were thwarted by the failure to answer grievances, or by Darcie Holthaus intercepting emergency grievances addressed to the Secretary of Corrections. *Id*. Plaintiff claims that Holthaus sent the grievance to staff at LSCF, which had nothing to do with the claims. Plaintiff states that his emergency grievance was returned to him on May 6, 2025. *Id*.

Plaintiff alleges that on March 13, 2025, while he was housed at LCF, Officers Barton and Haog "snatched [Plaintiff's] right arm through the food slide, after [Plaintiff] stuck [his] arm out to be un-cuffed." *Id*. at 2, 4. Plaintiff claims that the officers twisted his right wrist "to the point of breaking," and pulled the free cuff so hard that Plaintiff's forearm muscle split and/or tore, leaving two visible knots and an imprint on Plaintiff's arm from the top of the food slide.

*Id*. at 4.   Plaintiff alleges that prior to being "violently pulled through the food slide, Officer Barton slam[med] [Plaintiff] against the wall for no reason." *Id*.  Plaintiff alleges that the use of force was unnecessary because he was complying with being uncuffed. *Id*.  On March 22, 2025, Plaintiff sent an emergency grievance on the matter to the Secretary of Corrections. *Id*. at 2, 8.

Plaintiff alleges that he was seen by a doctor at LSCF, and it was determined that Plaintiff had an injury to the muscle in his forearm. *Id*.  Plaintiff alleges that he is "awaiting a sonogram appointment to confirm Doctor Ray's assessment of [Plaintiff's] injury." *Id*.  Plaintiff alleges that on March 22, 2025, he filed an emergency grievance with Jeff Zmuda, Secretary of Corrections.  (Doc. 1, at 2.)

Plaintiff alleges that the Warden's job is to make sure the prison in operable and therefore supervisory liability should attach. *Id*. at 6.  He claims that the segregation units were built with no intercoms, the facility is short-staffed, and there is a failure to train subordinates. *Id*.

As Count I, Plaintiff alleges cruel and unusual punishment due to the unnecessary use of force and based on the alleged inhumane living conditions.   As Count II, he alleges deliberate indifference to inmates' health and safety.  Plaintiff alleges an Eighth Amendment violation as Count III. *Id*. at 10.

Plaintiff names as defendants:   Jesse Howes, LCF Warden; Jeff Zmuda, Secretary, Kansas Department of Corrections ("KDOC"); (fnu) Brown, Correctional Officer; (fnu) Haog, Correctional Officer; and Darcie Holthaus, Corrections Manager.  Plaintiff seeks $25 million in damages and to "conclude [his] sentence." *Id*. at 12.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C.

§ 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant

did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Eighth Amendment

#### A. Excessive Force

Plaintiff alleges that Defendant Barton slammed Plaintiff against the wall for no reason, and Defendants Barton and Haog injured him by snatching his right arm through the food slide and twisting his right wrist. An excessive force claim by a convicted prisoner arises under the

Eighth Amendment's Cruel and Unusual Punishments Clause. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (stating that "claims of excessive force involving convicted prisoners arise under the Eighth Amendment").

The Eighth Amendment's prohibition against "cruel and unusual punishments" applies to the treatment of inmates by prison officials. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Prison officials violate inmates' Eighth Amendment rights when they subject them to the "unnecessary and wanton infliction of pain." *Id*. at 319. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id*. at 9–10.

Plaintiff must prove both an objective component and subjective component to succeed on an excessive force claim. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). To establish the objective component, Plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson*, 503 U.S. at 9 (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

Plaintiff's excessive force claim is not subject to dismissal at this time.  Other courts have held that:

> Slamming a person's arm in a (likely metal) food tray slot is objectively harmful, and it is difficult, without more detail, to infer how such an action would be related to a good faith effort to restore or maintain discipline. *See e.g., Williams v. Woodson*, 2016 WL 4539660, at *6 (M.D. Ga. Aug. 30, 2016), *report and recommendation adopted*, 2016 WL 11658951 (M.D. Ga. Sept. 26, 2016) (finding that allegations that correctional officer repeatedly slammed the cell door tray flap on Plaintiff's arms were sufficient to state a claim for excessive force in violation of the Eighth Amendment); *Driver v. Novy*, 2015 WL 9463180, at *3 (S.D. Ga. Dec. 28, 2015) (holding that allegations that correctional officer twisted his arm and slammed the tray flap against his arm were sufficient to state a claim for excessive force in violation of the Eighth Amendment).

*Baker v. GEO Lawton Corr. Facility*, 2024 WL 4720294, at *3 (W.D. Okla. Jan. 22, 2024), *report and recommendation adopted in part,* 2024 WL 4512338 (W.D. Okla. Oct. 17, 2024).

### B.  Conditions of Confinement

A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Id.*  To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.  Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety.  *Id*.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.  "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"  *Id*.  It is not enough to establish that the official should have known of the risk of harm.  *Id*.

### 1) Cell with Ashes and Fumes

Plaintiffs' allegations regarding ashes and fumes in his cell and the delay in receiving cleaning supplies fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm."  *See Ferris v. Jefferson Cty.*, Civil No. 07-cv-02215-REB-MJW, 2008 WL 5101240, at *5–6 (D. Colo. Nov. 26, 2008) (collecting cases finding isolated instances of food poisoning do not rise to the level of a constitutional violation and suggest negligence) (citations omitted).

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id.* (citations omitted).

Plaintiff alleges no facts showing that a defendant "both knew of and disregarded an excessive risk to [his] health or safety" related to the presence of ashes or fumes. *See Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 794 (10th Cir. 2013) (where prisoner claimed he was exposed to mold causing an allergic reaction, court found that he failed to show defendant knew of and disregarded an excessive risk to his health or safety despite his claim that defendant had a duty to inspect the prison facility but failed to do so). Similarly, a "bare allegation of [the presence of] mold . . . does not create a reasonable inference regarding the sort of threat to [a plaintiff's] mental or physical well being which is necessary for violation of the Eighth Amendment." *Cox v. Grady Cty. Detention Center*, 2008 WL 1925052, at *3–4 (W.D. Okla. April 29, 2008) (citing *Dittmeyer v. Whetsel*, 91 F. App'x 111 (10th Cir. Feb. 11, 2004)).

Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm." Plaintiff has also failed to allege "deliberate indifference" by any defendant. Plaintiff's claim suggests, at most, negligence. Claims under § 1983 may not be predicated on mere negligence. *See Daniels v.*

*Williams*, 474 U.S. 327, 330 (1986) (holding that inmate who slipped on a pillow negligently left on a stairway by sheriff's deputy failed to allege a constitutional violation); *see also Vasquez v. Davis*, 882 F.3d 1270, 1277–78 (10th Cir. 2018) (deliberate indifference requires more than negligence) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  Plaintiff should show good cause why his claims regarding ashes and fumes in his cell, and the delay in receiving cleaning supplies, should not be dismissed for failure to state a claim.

### 2) No Intercom in Segregation Cells

Plaintiff alleges that segregation cells do not have emergency intercoms in the cells, and the only way to request help is to press a button that causes a light to show on the inmate's door. Plaintiff alleges that staff are slow to respond, if at all.

"Courts have consistently held that a failure to provide an emergency call button to inmates is not a constitutional violation."  *Kristich v. Casady*, 2024 WL 4150475, at *6 (W.D. Okla. July 19, 2024), *report and recommendation adopted,* 2024 WL 3814046 (W.D. Okla. Aug. 14, 2024) (citing *see, e.g., Torres v. Wright*, No. 3:17-cv-01919 (JAM), 2018 WL 1175408 at *4 (D. Conn. Mar. 6, 2018) (prisoners do not have a constitutional right to a cell equipped with an emergency call button); *Bowens v. Sikes*, No. CV416-049, 2017 WL 486266, at *6 (S.D. Ga. Jan. 4, 2017) ("The risk posed by the lack of an emergency call button is not sufficiently serious to state a claim."); *Gandy v. Bryson*, No. 5:16-CV-44, 2016 WL 4385851, at *8 (S.D. Ga. Aug. 15, 2016) (noting that the failure to properly maintain an emergency call button in an inmate's cell is not more than gross negligence which does not rise to the level of a constitutional violation); *Garner v. City of Philadelphia*, No. 11-cv-5960, 2013 WL 4401327 at *6 (E.D. Pa. Aug. 16, 2013) ("Although panic buttons may offer inmates additional safety and protection, we cannot find that active panic buttons constitute a 'minimal civilized measure of life's necessities' ...");

*Williams v. Cass Ctny. Sheriff Dept.*, No. 1:09-CV-590, 2009 WL 2370713, at *4 (W.D. Mich. July 30, 2009) ("The failure to provide an emergency call button, standing alone, does not constitute deliberate indifference.")); *see also Kingcade v. Holder*, No. 1:19-cv-165-NAB, 2020 WL 495131, at *3 (E.D. Mo. Jan. 30, 2020) (dismissing allegations regarding lack of emergency call button in cell for failure to state an Eighth Amendment claim).

Plaintiff does not allege that there is no call button. He merely alleges that the button activates a light outside the cell door instead of providing an intercom. He also alleges that staff are slow to respond, if at all. Plaintiff does not allege that he used the button in an emergency and instead makes a general argument that each segregation cell should have an intercom. Plaintiff does not have standing to make allegations about experiences of other inmates or claims on behalf of the inmate population in general.

It is well-settled that a § 1983 claim must be based on the violation of Plaintiff's personal rights and not the rights of someone else. *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (citations omitted). To the extent Plaintiff raises claims on behalf of others, a review of the allegations contained in his Complaint indicates he lacks standing to do so. To have standing, a prisoner must state "specific facts connecting the allegedly unconstitutional conditions with his own experiences [in the prison], or indicat[e] how the conditions caused him injury." *Swoboda v. Dubach,* 992 F.2d 286, 289 (10th Cir. 1993). "[G]eneral observations" about prison conditions are not actionable under 42 U.S.C. § 1983. *Id.* at 289–90.

Such general grievances are best addressed to the legislative, not the judicial, branch. *Bd. of Cty. Comm'rs of Sweetwater Cty. v. Geringer,* 297 F.3d 1108, 1112 (10th Cir. 2002) (citing *Allen v. Wright,* 468 U.S. 737, 751 (1984)). Such claims should be dismissed for lack of prudential standing. *See, e.g., Whitington v. Ortiz,* 307 F. App'x 179, 191 (10th Cir. 2009) *(pro*

*se* prisoner plaintiff "lack[ed] standing to attempt to re-regulate the entire CDOC system, or to sue directly or indirectly on behalf of anyone but himself"); *Martinez v. Mesa Cty. Sheriff's Dep't,* 69 F.3d 548 (Table), 1995 WL 640293 at *1 (10th Cir. 1995) (unpublished) (court is not empowered to decide "generalized grievances concerning prison management").

Plaintiff should keep these principles in mind when drafting his amended complaint. His claims will be considered only to the extent they allege a violation of *his* constitutional rights. He should also show good cause why his claims regarding the lack of an intercom system in segregation cells should not be dismissed for failure to state a claim.

### 3) No Yard for One Month

Plaintiff alleges that he was denied yard for one month. He does not allege that he was denied out-of-cell time or out-of-cell exercise. He does not indicate when this happened, who denied him yard, or why he was denied yard.

This Court has held that:

> Although recognizing that outdoor exercise is "extremely important to the psychological and physical well-being of inmates," the Tenth Circuit has also "made clear that a denial of outdoor exercise does not per se violate the Eighth Amendment." *Apodaca v. Raemisch*, 864 F.3d 1071, 1077 (10th Cir. 2017) (quoting *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) (per curiam)). In fact, in *Lowe v. Raemisch*, 864 F.3d 1205 (10th Cir. 2017), the court of appeals held that it was not clearly established that restricting an inmate's outdoor exercise for two years and one month is a violation under the Eighth Amendment. *See id.* at 1210. Without a per se rule on the constitutionality of restricting outdoor exercise, the Tenth Circuit requires a court to examine the totality of the circumstances to determine whether a restriction on outdoor exercise is a violation. *See Apodaca*, 864 F.3d at 1077. Thus, government officials who enact policies that restrict inmates' outdoor exercise are left with little to no guidance because of the lack of per se rules and the totality of circumstances analytical framework.

*Cox v. Zmuda*, 2023 WL 7279337, at *5 (D. Kan. Nov. 3, 2023), *appeal dismissed*, 2024 WL 2014667 (10th Cir. Jan. 29, 2024)).  Although the Court in *Cox* was addressing the denial of all out-of-cell exercise, as opposed to just a denial of outside exercise, the Court held that the "Defendants reduced out-of-cell exercise for a legitimate penological interest: to ensure institutional security and the safety of prisoners and staff in the face of emergency staffing shortages." *Id*. at *7.

Plaintiff alleges that he was denied yard for one month.  Courts have held that longer periods without outdoor exercise did not violate the Eighth Amendment.  *See Williamson v. Miller*, 2009 WL 691899, *5 (E.D. Okla. 2009) (finding that the approximately 8–month period without outside exercise, while restrictive, is not sufficiently serious to rise to the level of a constitutional violation) (citing *see Fogle v. Pierson,* 435 F.3d 1252, 1260 (10th Cir. 2006) (holding that "a factfinder might conclude that the risk of harm from *three years* of deprivation of any form of outdoor exercise was obvious and that [prison] officials disregarded that risk by keeping Fogle in administrative segregation") (emphasis added); *see also Ajaj v. United States,* 293 Fed. Appx. 575, 583–84, 2006 WL 3797871 (10th Cir. 2008) (holding that prisoner's denial of outdoor recreation his first year at the facility did not violate the Eighth Amendment)).

Plaintiff should show good cause why his claim regarding the lack of yard for one month should not be dismissed for failure to state a claim.

### 4)  Failure to Protect

Plaintiff asserts that the Defendants failed to protect him by housing him naked in a cell with a sex offender.  "Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*,

139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)).  This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted).  To prevail on a failure to protect claim, a plaintiff must show:  "(1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Requena*, 893 F.3d at 1214 (citation omitted).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)).  "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim."  *Id*. (citing *Marbury*, 936 F.3d at 1238).  Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

Plaintiff alleges that he was housed without clothing in a cell with a sex offender.  He does not provide any factual support showing that any defendant possessed enough details about a threat to enable them to conclude that it presented a strong likelihood of injury, not a mere possibility.  Plaintiff does not indicate how long he was in the cell or whether or not he asked to be moved.  He does not allege that any harm came to him or that he was injured in any way.  *See Gray v. Sorrels*, 744 F. App'x 563, 571 (10th Cir. 2018) (unpublished) (finding allegations of

failure to protect too conclusory to establish personal participation and failed to allege specific content of emails); *see also Leonard v. Lincoln Cty. Bd. of Comm'rs*, 790 F. App'x 891, 894 (10th Cir. 2019) (unpublished) (finding plaintiff's general request and grievance did not put jail officials on notice that he was at risk of being assaulted). Plaintiff should show good cause why this claim should not be dismissed for failure to state a claim. Plaintiff should provide additional factual support in any amended complaint that he files.

### 2. Personal Participation

#### A. Warden Howes

Plaintiff alleges that Warden Howes should be subject to supervisory liability because it is his job to make sure the prison is operable, the segregation units were built with no intercoms, the facility is short-staffed, and there is a failure to train subordinates. Plaintiff has failed to allege how the Warden personally participated in the deprivation of his constitutional rights, and appears to rely on the supervisory status of the Warden.

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)). Conclusory allegations of involvement are not sufficient. *See*

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability). An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949). Plaintiff's claims against Warden Howes are subject to dismissal.

### B. Jeff Zmuda and Darcie Holthaus

Plaintiff does not allege how these defendants violated his constitutional rights. His claims appear to be based on their responses to his grievances. He claims that Darcie Holthaus intercepted his letters to the Secretary of Corrections because they were deemed not to qualify as

an emergency grievance.

Plaintiff's only allegations involving these defendants appears to relate to their denials of his grievances or failure to respond to his grievances. The Tenth Circuit has held that "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing *Whitington v. Ortiz,* 307 Fed. Appx. 179, 193 (10th Cir. 2009) (unpublished); *Larson v. Meek,* 240 Fed. Appx. 777, 780 (10th Cir. 2007) (unpublished); *see also Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir.2 002) (per curiam) ("[Plaintiff] failed to state First Amendment claims relating to his grievances . . . because defendants' denial of his grievances did not state a substantive constitutional claim.")). Plaintiff has not adequately alleged any factual basis to support an "affirmative link" between these defendants and any alleged constitutional violation. *See id*. Plaintiff's claims against Defendants Zmuda and Holthaus are subject to dismissal.

The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not

guarantee a favorable response, or indeed any response, from state officials"). Any claims regarding the grievance process and the failure to properly respond to grievances are subject to dismissal for failure to state a claim.

### 3. Request for Relief

Plaintiff seeks monetary damages and to have his sentence concluded. "The Tenth Circuit has made it clear that where a claimant seeks relief against a KDOC official in his or her official capacity, the party seeks judgment against the KDOC itself, rendering the claim as one against the sovereign." *Jamerson v. Heimgartner*, No. 5:17-3205-JAR-KGG, 2020 WL 1923074, at *10 (D. Kan. April 21, 2020) (citing *Jones v. Courtney*, 466 F. App'x 696, 699 – 700 (10th Cir. 2012) (collecting cases)). The Eleventh Amendment therefore applies to any official capacity claims against a KDOC defendant. *Id*. Any official capacity claims for money damages are subject to dismissal based on sovereign immunity.

Plaintiff also seeks to have his sentence concluded. Such a challenge must be brought in a habeas action. "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*" *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added). When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement. *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an

opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982). Therefore, any claim seeking release from imprisonment is not cognizable in a § 1983 action.

### 4.  Exhaustion

Plaintiff's allegations suggest that he did not fully exhaust his administrative remedies prior to filing this action.  Plaintiff filed emergency grievances regarding the alleged excessive force incident with Barton and Haog.  (Doc. 1, at 8.)  He also filed an emergency grievance regarding being placed in the crisis level cell with a sex offender, and an emergency grievance regarding being placed in the cell with ashes and fumes.  (Doc. 1, at 9.)  Plaintiff attaches a response to one of the emergency grievances notifying him that the matters raised did not constitute an emergency.  *Id.* at 7.  The response notifies Plaintiff that he should not be permitted to bypass efforts to resolve the grievance at the facility level, and that it is being forwarded to the Warden of his current facility for review and response in accordance with KAR's 44-15-106, 44-15-101(d) and 44-15-102(b).  *Id.*  It indicates that the grievance will be processed as a regular grievance.  *Id.*  Although the response is dated March 28, 2025, there is a notation on the response indicating that the document was returned to Plaintiff on May 6, 2025.  *Id.*  Plaintiff filed this § 1983 action on May 12, 2025.  Therefore, it appears that Plaintiff did not fully exhaust his administrative remedies prior to filing this case.

For Kansas state prisoners, the administrative remedies require the inmate to seek an informal resolution with personnel who work with the inmate on a daily basis. K.A.R. § 44–15–101(b).  If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team

member, (2) the warden of the facility, and (3) the office of the secretary of corrections.  K.A.R.

§ 44–15–101(d).  The procedure to follow at each level is described in detail in the Kansas

Administrative Regulations.  § 44–15–102; *see also Garza v. Correct Care Solutions*, 2011 WL

2580299, at *2 (D. Kan. 2011), *aff'd* 451 F. App'x 775 (10th Cir.) (granting summary judgment

for failure to exhaust claims against Correct Care Solutions where plaintiff failed to allege that

he sought relief on his claims first through his unit team, then the warden, and finally from the

Secretary of Corrections).

> This Court has held that:

>> The regulations do not provide for exhaustion "by default" if the
>> informal resolution is unsuccessful. If an inmate does not receive a
>> response to a grievance, they "may move to the next stage of the
>> grievance procedure if a timely response is not received at any step
>> in the grievance process." K.A.R. 44-15-101b. "If an inmate does
>> not receive a response from the unit team within 10 calendar days,
>> a grievance report may be sent to the warden without the unit team
>> signature or signatures." K.A.R. 44-15-102(a)(2).

*Clay v. Esparza*, 2020 WL 6117856, at *4 (D. Kan. 2020).

In *Kidd v. Baker*, the plaintiff alleged that he filed emergency grievances.  *Kidd v. Baker*,

2022 WL 17485932, at *6 (D. Kan. 2022).  The Court concluded that the plaintiff failed to

exhaust his administrative remedies, stating that "[w]hile he sent letters or 'petitions' to the

Secretary of Corrections, he did not follow the established procedure."  *Id*.  "Simply presenting a

defective or non-complying grievance . . . does not constitute exhaustion of remedies."  *Id*.

(quoting *Brewer v. Mullin*, 130 F. App'x 264, 265 (10th Cir. 2005)).

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all

available prison administrative remedies before filing a complaint in federal court.

Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under

> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that

under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit

regarding prison conditions in federal court") (citations omitted). "Congress enacted § 1997e(a)

to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress

afforded corrections officials time and opportunity to address complaints internally before

allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002)

(citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of

exhaustion include allowing a prison to address complaints about the program it administers

before being subjected to suit, reducing litigation to the extent complaints are satisfactorily

resolved, and improving litigation that does occur by leading to the preparation of a useful

record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to

dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir.

2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249. A prison or prison system's

regulations define the steps a prisoner must take to properly exhaust administrative remedies and

a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607

F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "An inmate who begins the

grievance process but does not complete it is barred from pursuing a § 1983 claim under [the]

PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030,

1032 (10th Cir. 2002) (citation omitted). "The level of detail necessary in a grievance to comply

with the grievance procedures will vary from system to system and claim to claim, but it is the

prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). "Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (alteration in original) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

The issue of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit. *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim). Under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court." *Little*, 607 F.3d at 1249 (citations omitted).

## IV. Motion to Appoint Counsel

Plaintiff has filed a Motion to Appoint Counsel (Doc. 6), arguing that he has no access to a law library while housed in segregation, the facility has only one law library tablet and staff cannot locate it, Plaintiff is unable to investigate his case to adequately litigate, and the case is complex. (Doc. 6, at 1–2.)

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543,

547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if this case survives screening.

## V. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's claims that are subject to dismissal should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein. To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead

completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (25-3091-JWL) at the top of the first page of the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant. If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, Plaintiff's claims that are subject to dismissal may be dismissed without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Appoint Counsel (Doc. 6) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **July 28, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's claims that are subject to dismissal should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **July 28, 2025**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated June 27, 2025, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**