IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RYAN CHRISTOPHER CHEATHAM,

    **Plaintiff,**

    v.                                                   CASE NO. 25-3091-JWL

JESSE HOWES, et al.,

    **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se civil rights case under 42 U.S.C. § 1983. Although Plaintiff is currently in custody at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"), the claims in his Second Amended Complaint (Doc. 34) ("SAC") are based on his incarceration at the Lansing Correctional Facility in Lansing, Kansas ("LCF") and the Larned State Correctional Facility in Larned, Kansas ("LSCF").

**I.  Background**

On June 27, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 7) ("MOSC") ordering Plaintiff to show good cause why various claims in his Complaint should not be dismissed for the reasons set forth in the MOSC. The Court also granted Plaintiff an opportunity to file an amended complaint to cure the deficiencies. Plaintiff filed an Amended Complaint (Doc. 18), and on September 2, 2025, the Court entered a Memorandum and Order (Doc. 23) ("M&O"), granting Plaintiff until October 2, 2025, in which to file a complete and proper second amended complaint to cure all the deficiencies discussed in the M&O. On September 5, 2025, the Court entered a Memorandum and Order (Doc. 26) ("M&O II") denying Plaintiff's motion to reconsider the M&O.

Plaintiff then filed a Motion for Court to Resend Amended Complaint Attachments and All

Exhibits (Doc. 27); Plaintiff's second Motion for Reconsideration (Doc. 29); and Plaintiff's Motion for Extension of Time (Doc. 30). Plaintiff's motion at Doc. 27 asked the Court to resend his attachments and exhibits to his Amended Complaint, or allow him to file his second amended complaint without resubmitting the attachments/exhibits. Plaintiff alleges that the attachments/exhibits were destroyed when the box was dropped and soap spilled all over his papers. The Court entered a Memorandum and Order (Doc. 33) granting the motion to the extent that Plaintiff was not required to resubmit his attachments and exhibits from his Amended Complaint.[1] The Court also denied the current motion for reconsideration for the same reasons set forth in the Court's Memorandum and Order denying the first motion. *See* Doc. 26.

This matter is before the Court for screening Plaintiff's SAC. The Court's screening standards are set forth in the Court's MOSC.

## II. Plaintiff's SAC

Plaintiff alleges in his SAC that at LCF on March 13, 2025, Officer Barton slammed him against the wall "for no reason," and Officers Barton and Haog snatched his right arm through the food slide. (Doc. 34, at 2, 3.) Plaintiff alleges that he stuck his arm out to be uncuffed and the officers twisted his right wrist "to the point of breaking." *Id*. at 2. Plaintiff alleges that they pulled on the free cuff so hard that Plaintiff's right forearm muscle split or tore, and a deformity is now present. *Id*. at 3. Plaintiff alleges that he was left with two visible knots and an imprint from the top of the food slide on his right arm. *Id*. Plaintiff alleges that the use of force was unnecessary because he was complying with being uncuffed. *Id*.

Plaintiff alleges that his sick call requests were ignored, and he was transferred back to LSCF. *Id*. Plaintiff alleges that at LSCF, Dr. Ray determined that he had an injury, and Plaintiff

---

[1] The Court notes that most of the exhibits attached to Plaintiff's Amended Complaint appear to relate to his LSCF claims that are being dismissed from this case. The only page relating to his LCF claim is at Doc. 18–1, at 28.

is awaiting an MRI to confirm Dr. Ray's assessment. *Id*.

Plaintiff also alleges that he was subjected to excessive force at LSCF. *Id*. at 4. He alleges that on July 4, 2025, Warden Easley, Major Graham, and Captain Bieberle "ordered and or approved a use of force" on Plaintiff. *Id*. Plaintiff alleges that while he had his hand in the air in a submissive position, Officer Cobb ordered the deployment of "pepperball projectiles." *Id*. Plaintiff alleges that Officers Hopkins and Ford were actively shooting the projectiles as Plaintiff stood with his back facing them and his hands up. *Id*. Plaintiff alleges that there was no "active violence," and he did not have a weapon "at the time the shots started." *Id*.

Plaintiff names as defendants: (fnu) Barton, Correctional Officer ("CO") at LCF; (fnu) Haog, CO at LCF; (fnu) Easley, LSCF Warden; (fnu) Hopkins, CO at LSCF; (fnu) Ford, CO at LSCF; (fnu) Cobb, CO at LSCF; (fnu) Bieberle, Captain at LSCF; (fnu) Graham, Major at LSCF; (fnu) Wayne, CO at LSCF.[2] Plaintiff seeks "1.5 million for pain & suffering, emotional and mental distress, punitive damages, and whatever else courts deem just." *Id*. at 9.

## III. Discussion

### A. Incident at LSCF

Plaintiff alleges that he was subjected to excessive force while housed at LSCF. Plaintiff's original Complaint did not include claims against staff at LSCF. Plaintiff's Amended Complaint retained his claim regarding excessive force at LCF, and added staff from LSCF as defendants and added claims regarding incidents at LSCF.

In screening Plaintiff's Amended Complaint, the Court advised Plaintiff that his Amended Complaint set forth unrelated claims. The Court advised Plaintiff that he must follow Rules 20 and 18 of the Federal Rules of Civil Procedure when filing his second amended complaint. The

---

[2] Plaintiff does not mention CO Wayne in the body of his SAC.

Court also advised Plaintiff that the Federal Rules authorize a court, on its own initiative at any stage of the litigation, to drop any party and sever any claim. Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately).

Plaintiff's SAC continues to assert unrelated claims. On October 9, 2025, Plaintiff initiated a new case against staff at LSCF. *See Cheatham v. Easley*, Case No. 25-3218-JWL. That case names Warden Tim Easley and Major Graham as defendants, and alleges that he was placed in mandatory segregation for one year due to his battery on a CO. *Id*. at Doc. 1. The Court will drop the misjoined parties from this case. The Court dismisses Plaintiff's claims against the LSCF defendants without prejudice.

**B. Incident at LCF**

Plaintiff alleges that Defendant Barton slammed Plaintiff against the wall for no reason, and Defendants Barton and Haog injured him by snatching his right arm through the food slide and twisting his right wrist. An excessive force claim by a convicted prisoner arises under the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (stating that "claims of excessive force involving convicted prisoners arise under the Eighth Amendment").

The Eighth Amendment's prohibition against "cruel and unusual punishments" applies to the treatment of inmates by prison officials. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Prison officials violate inmates' Eighth Amendment rights when they subject them to the "unnecessary and wanton infliction of pain." *Id*. at 319. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments

4

Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id*. at 9–10.

Plaintiff must prove both an objective component and subjective component to succeed on an excessive force claim. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). To establish the objective component, Plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson*, 503 U.S. at 9 (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

Other courts have held that:

> Slamming a person's arm in a (likely metal) food tray slot is objectively harmful, and it is difficult, without more detail, to infer how such an action would be related to a good faith effort to restore or maintain discipline. *See e.g., Williams v. Woodson*, 2016 WL 4539660, at *6 (M.D. Ga. Aug. 30, 2016), *report and recommendation adopted*, 2016 WL 11658951 (M.D. Ga. Sept. 26, 2016) (finding that allegations that correctional officer repeatedly slammed the cell door tray flap on Plaintiff's arms were sufficient to state a claim for excessive force in violation of the Eighth Amendment); *Driver v. Novy*, 2015 WL 9463180, at *3 (S.D. Ga. Dec. 28, 2015) (holding that allegations that correctional officer twisted his arm and slammed the tray flap against his arm were sufficient to state a claim for excessive force in violation of the Eighth Amendment).

*Baker v. GEO Lawton Corr. Facility*, 2024 WL 4720294, at *3 (W.D. Okla. Jan. 22, 2024), *report and recommendation adopted in part,* 2024 WL 4512338 (W.D. Okla. Oct. 17, 2024).

The Court finds that the proper processing of Plaintiff's excessive force claim against Defendants Barton and Haog cannot be achieved without additional information from appropriate KDOC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate KDOC officials of to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

## IV. Motion (Doc. 35)

Plaintiff has filed a "Motion for Proof of Seized Footage from March 13, 2025" and "Motion for Emergency Production of July 4, 2025 Incident at Larned Correction" (Doc. 35). Plaintiff claim based on the July 4, 2025 incident at LSCF is being dismissed. Plaintiff request for footage from the March 13, 2025 incident is unnecessary in light of the Court's order for a *Martinez* Report, which is to include recordings related to Plaintiff's claims. Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's claims against the LSCF defendants are **dismissed without prejudice**. The only remaining defendants in this case are LCF Defendants Barton and Haog.

**IT IS FURTHER ORDERED** that Plaintiff's motion (Doc. 35) is **denied.**

**IT IS FURTHER ORDERED** that**:**

> (1) The Court will enter a separate e-service order directing the Clerk of Court to serve Defendants.
>
> (2) The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report within **sixty (60) days** following the electronic filing of the Waiver

of Service Executed. Upon the filing of that Report, the Court will screen the remaining excessive force claim in Plaintiff's SAC. If the SAC survives screening, the Court will enter a separate order setting an answer deadline. Therefore, any answer deadline provided in the docket entry for the waiver of service is not controlling.

(3) Officials responsible for the operation of LCF are directed to undertake a review of the subject matter of the remaining excessive force claims in the SAC.

a. To ascertain the facts and circumstances;

b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the SAC; and

c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this SAC and should be considered together.

(4) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(5) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written

report. Any recordings related to Plaintiff's claims shall also be included. The KDOC officials shall redact and/or mute audio for any personal identifiers included in any video or recording submitted.

(6) Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(7) No motion or other document addressed to the SAC shall be filed until the Court has reviewed the *Martinez* Report and entered an order screening the SAC.

(8) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the SAC. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, Defendants Barton and Haog, counsel for the KDOC, and the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated October 27, 2025, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**