IN THE UNITED STATES DISTRICT COURT
FOR THE DISTICT OF KANSAS

| | |
|---|---|
| **RYAN CHRISTOPHER CHEATHAM,** )<br>　　Plaintiff,　　　　　　　　　　　) <br> 　　　　　　　　　　　　　　　　) <br> v.　　　　　　　　　　　　　　　) <br> 　　　　　　　　　　　　　　　　) <br> **JESSE HOWES,** *et al.,*　　　　　　) <br> 　　Defendants.　　　　　　　　　) | Case No. 25-CV-03091-JWL |

REPORT IN "*MARTINEZ VS AARON*" INVESTIGATION

CIVIL RIGHTS COMPLAINT

**COMES NOW**, counsel undersigned for the Kansas Department of Corrections (KDOC) and in accordance with the Court's October 27, 2025, Memorandum and Order submitting the following *Martinez* report to assist the Court in further screening the merits of Ryan Christopher Cheatham's (Plaintiff) claims. This report is based upon affidavit testimony and official internal facility documentation available at the time of preparation. KDOC reserves the right to seek leave to supplement this report in the unlikely event additional evidence is discovered or becomes available.

Plaintiff filed a *pro se* civil rights action pursuant to 42 U.S.C. §1983 in the United States District Court for the District of Kansas (Doc. 1). At all relevant times, Plaintiff was a resident incarcerated in custody of the Secretary of Corrections. From January 21, 2025, to March 18, 2025, Plaintiff was housed at Lansing Correctional Facility. From June 4, 2024, to January 21, 2025, and March 18, 2025, to September 2, 2025, Plaintiff was housed at the Larned State Correctional Facility (LSCF) in Larned, Kansas. (Exhibit 1- Redacted). Presently, Plaintiff is housed at the El Dorado Correctional Facility (EDCF) as of September 2, 2025. (Id). Only one of Plaintiff's complaints is alleged to have occurred at Lansing Correctional Facility (LCF), which

is his claim regarding an alleged excessive use of force by LCF staff on or about March 13, 2025, which resulted in injury to the right wrist area.

On June 27, 2025, the Court entered a Memorandum and Order to Show Cause, granting Plaintiff an opportunity to show good cause why this action should not be dismissed due to deficiencies in Plaintiff's Amended Complaint or to file a second amended complaint to cure the deficiencies. (Doc 6). July 2, 2025, Plaintiff filed his Motion for Leave to Amend Complaint. ( Doc. 7). Court enters Memorandum and Order granting Plaintiff to file his amended complaint despite Plaintiff's grievance was not returned at level 1. (Doc. 9). Next, on July 9, 20205, Plaintiff files Motion for Order to have seizure and emergency production of video footage from March 13, 20205, among other housekeeping motions. (Doc. 10). The Court then enters its next Memorandum and Order regarding Doc. 10, Doc. 11, and Doc. 12. (Doc. 13). This Memorandum and Order directing the Court Clerk to provide a copy of the Memorandum and Order to LCF Warden Howes and counsel of KDOC, putting KDOC on notice to preserve relevant video footage to the Complaint. (Id.). Plaintiff filed a Second Amended Complaint on July 31, 20205. (Doc. 18). This complaint included new allegations regarding his treatment and care while at Larned Correctional Mental Health Facility. (Id.).

On October 27, 2025, the Court issued a Memorandum and Order as well as Service Order directing the preparation of a *Martinez* report by interested party KDOC. (Doc. 36 and 37).

BRIEF SUMMARY OF ALLEGATIONS IN PLAINTIFF'S COMPLAINT

In his Second Amended Complaint (Doc. 18), Plaintiff alleges that he was subjected to cruel and unusual punishment related to an alleged use of force while incarcerated at LCF on or about March 13, 2025. (Id.). Plaintiff all alleges he was subjected to another excessive use of

force while house at LSCF following the LCF allegation. (Id.) Plaintiff names Barton, Haog, Easley, Hopkins, Ford, Cobb, Bieberle, Captain at LSCF, Graham, Major at LSCF, Wayne as defendants in his Second Amended Complaint and seeks the following injunctive relief: "1.5 million for pain and suffering, emotional and mental distress, punitive damages, and whatever else courts deem just. (Id. at 9). According to his complaint, Plaintiff has sustained a broken right arm with his right forearm muscle having been split and torn resulting in deformity being present now. (Id. page 10).

## INVESTIGATION

Plaintiff's incarceration began on April 1, 2024, at El Dorado Correctional Facility RDU (Exhibit 1 - Redacted). Then he moved to Larned Correctional Mental Health Facility (aka LSCF) on June 4, 2024. (Id.). On January 21, 2025, he was transferred to Lansing Correctional Facility (LCF) where he remained until March 18, 2025. (Id.). He was then transferred back to LSCF until September 2, 2025, where he was then sent back to El Dorado Correctional Facility (EDCF). (Id.). He now remains at EDCF where he continues to be housed at the time of this investigation. (Id.)

### *VIDEO RECORDING*

On or about July 9, 2025, Plaintiff filed Document 10 titled "Motion to Seize or Order Emergency Production of Video Footage from March 13, 2025, Lansing Incident Involved Use of Force." The Court then entered a Memorandum and Order on July 16, 2025, granting to the extent that KDOC be given a copy of the Court's July 16, 2025, Memorandum and Order and that any video footage of March 13, 2025, of the alleged incident be retained for potential future

production. (See Doc. 13). This is the first notice to KDOC to find and retain video footage in this case.

Video footage from March 13, 2025, was not found as any video footage by the time the July Memorandum and Order was given the video footage had been lost. According to LCF Plant Supervisor and former Use of Force Lieutenant, Jeremy Jewell, the footage from March 13, 2025, would have had to be preserved no later than May 12, 2025. (Exhibit 15, ¶ 13 - 14). Mr. Jewell became aware of the need for video footage in July 2025 after KDOC's receipt of the Court's July 16, 2025, which Mr. Jewell refers to as attached Exhibit A to his affidavit. (Id., ¶ 9). Mr. Jewell was unable to find video footage regarding the Plaintiff for March 13, 2025. (Id., ¶ 11).

*USE OF FORCE*

There was no documentation of the use of force between Ryan Christopher Cheatham and SORT officers Jerry Barton and Nathan Hoag resulting in injury on or about March 13, 2025. LCF Plant Supervisor, Jeremy Jewell, did not locate any documentation or records of the use of force on resident Ryan Christopher Cheatham for March 13, 2025. (Exhibit 15, ¶ 6, 10, and 12). Corrections Manager II, Lindsey Wildermuth, supervised the housing unit during the timeframe of the Plaintiff's allegations and could not locate any documentation or records of the use of force on resident Ryan Christopher Cheatham for March 13, 2025, or reports of injuries either. (Exhibit 17, ¶ 14-15). Classification and Case Management Administrator, Meghan Davis, also could not locate any records of an incident occurring on March 13, 2025, in which Plaintiff sustained an injury. (Exhibit 18, ¶ 11 – 13).

Use of force documentation is created in the regular course of business and with the procedures set forth in Internal Management Policy and Procedure 01-113D and 12-111A. Attached hereto as Exhibits 10 and 11 respectively (Exhibit 11 – IMPP 12-111A is provisionally under seal as it is a "Staff Read Only" document). Since Exhibit 11 is designed as "Staff Read Only" and cannot be provided to Plaintiff for his review. However, It is provided to the Court as a sealed document with a protective order. Internal Management Policy and Procedure 01-113D, speaks on reporting of any incident or important event occurring at the facility, whereas Internal Management Policy and Procedure 12-111A is applicable in the event of use of force.

Both LCF SORT Officers, Jerry Barton and Nathan Hoag, have no recollection of having done a use of force on Plaintiff on March 13, 2025, or having done a use of force resulting in an injury to Plaintiff. (Exhibits 13 and 14). LCF SORT Officer, Jerry Barton, has confirmed working on March 13, 2025, from 11:00am to 10:07pm in the Medium/Max areas of LCF. (Exhibit 13, ¶ 14). Mr. Barton does not recall having had memorable or meaningful interactions with Plaintiff and does not recall interacting with, witnessing, or participating in a use of force involving Plaintiff being injured on March 13, 2025. (Id., ¶ 9-11). LCF SORT Officer, Jerry Barton, has confirmed working on March 13, 2025, from 10:56am to 9:03pm in the Medium/Max areas of LCF. (Exhibit 14, ¶ 14). Mr. Hoag does not have any recollection of interacting with, witnessing, or participating in a use of force involving Plaintiff being injured on March 13, 2025. (Id., ¶ 9 – 11). Mr. Hoag does generally recall Plaintiff being aggressive towards staff or behaving disobediently towards staff. (Id., ¶ 15 and 16).

## MEDICAL CARE

Plaintiff receives medical care while being incarcerated from Centurion, who is KDOC's contracted medical care provider. (Exhibit 12, ¶ 4). Based on the lengthy documentation of

Plaintiff's medical history, Plaintiff appears willing and capable of utilizing the medical services provided by Centurion. (Exhibit 2 – filed provisionally under seal). From review of the 711 pages of Plaintiff's Medical Records in Exhibit 2 and based on the conclusions drawn by Dr. Bryan Wilon, there is no record of medical staff treating the Plaintiff for injuries to his wrist on or about March 13, 2025, through March 17, 2025. (referring to Exhibit 2, and Exhibit 12, ¶ 9 – 13). The only documented medical staff interaction with Plaintiff was on March 13, 2025, at 6:33am and was regarding an in-cell visit due to Plaintiff being on the floor unresponsive and being left in the cell to sleep off anything he ingested. (Exhibit 2, page 162 – 163).

The first recorded date involving treatment for the alleged injury occurred on March 18, 2025, for a sick call request. (Exhibit 12, ¶ 14 – 18). The subsequent treatment found there to be normal tissue with no discreet nodules, arthritic changes to the wrist without signs of acute trauma. (Exhibit 12, ¶ 19 – 20). According to Dr. Bryan Wilson, after having reviewed Plaintiff's medical records, he found there to be nothing in the medical record showing fractures or strained or torn muscles or ligaments in Plaintiff's right arm. (Exhibit 12, ¶ 21).

Other notable medical history records are as follows: documentation regarding refusal of healthcare services for right hand pain for March 5, 2025, prior to the date of alleged injury. (Exhibit 2, pages 157 and 667). Indicating prior injury to the complained of area before the March 13, 2025, date. (Exhibit 2, pages 7, 9, 157, and 667). Plaintiff then put in two sick call request forms on March 14, 2025, for a reschedule of the visit for his right hand now relating the injury to the alleged use of force. (Exhibit 2, page 705 and 706). Plaintiff's medical records also show that Plaintiff was able to put in a sick call on March 14, 2025, at 1:23pm requesting to be seen by dental as he was having "serious tooth pain, need to be seen APAP 2nd request" via a health services request form. (provisionally sealed Exhibit 2, page 165). Additionally, Plaintiff's

medical records show that he was seen by Behavioral Heath on March 14, 2025, at 3:38pm and appeared to have "no signs of acute distress." (provisionally sealed Exhibit 2, page 167).

*MOVEMENT RECORD*

Plaintiff's complaint lacks details as to why he was cuffed initially or what lead to his need for being cuffed and then uncuffed. Often when a resident is hand cuffed, it is for change of movement from one cell other another or their status (like going from restrictive housing to crisis level/medical). There are no records from March 13, 2025, showing Cheatham was cuffed and moved to other locations. (Exhibit 5). The medical records of Cheatham indicate that he was observed and believed to be under the influence and was left in his cell to sleep on March 13, 2025, at 6:55am. This indicates he was not cuffed or disturbed at his cell on the early morning March 13, 2025. However, that check was done prior to the start of the shifts of LCF SORT Officers Barton and Hoag.

*GRIEVANCES AND COMPLAINTS*

The process for reviewing resident grievances is contained in several Kansas Administrative Regulations including: K.A.R. 44-15-101 - Inmate or parolee grievance procedure; information resolution; formal levels (Exhibit 6), K.A.R. 44-15-101a – Grievance procedure distribution; applicability; remedies; advisory committee; investigation (Exhibit 7), and K.A.R. 44-15-102 – Procedure (Exhibit 8). K.A.R. 44-12-106 – Emergency procedure, governs the process and requirements for emergency grievances. (Exhibit 9).

Corrections Manager II, Darcie Holthas, is tasked with the responsibility of acting as the Secretary of Corrections designee in receiving, review, and responding to KDOC resident emergency and non-emergency grievances. (Exhibit 16, ¶ 1 – 4). Ms. Holthaus received an

emergency grievance from Plaintiff on or about March 27, 2025. (Id., ¶10). This emergency grievance claimed excessive use of force by Barton and Hoag during the "2 – 10 shift between [hours] 8:00 – 9:30" were Plaintiff sustained an injury in the form of a "knot" to his right wrist. (Exhibit 3, page 1). Upon review, Ms. Holthaus did not find the emergency grievance to meet the standards of an emergency pursuant to K.AR. 14-15-106 and directed Plaintiff to follow the proper grievance procedures in K.A.R. 14-15-101and 14-15-102. (Exhibit 16, ¶ 12 and 13). This grievance does not fully proceed through the regular grievance procedures and Plaintiff failed to exhaust on this grievance.

Ms. Holthaus then receives another grievance from Plaintiff that was sent directly to the Secretary of Corrections to review to which she gave response on or about August 6, 2025. (Exhibit 16, ¶ 15- 16). At the same time, LCF Warden's office received a grievance numbered A 20216-016 on August 5, 2025. (Exhibit 3, page 17). A response was given by both Ms. Holthaus and the LCF Warden's office just 2 days apart. (Exhibit 16, ¶ 16). Ms. Holthaus's response being first, indicating Plaintiff did not follow grievance procedure and awaited the facility to respond or could address his issues first. Based on the documentation, Ms. Holthaus has concluded Plaintiff had failed to properly and fully exhaust his administrative remedy in accordance with the grievance procedures. (Exhibit 16, ¶ 17). Additionally, Ms. Holthaus found no personal injury claims with KDOC from Ryan Christopher Cheatham for the claimed injury date of March 13, 2025. (Id., ¶ 18).

There is, however, documentation of letters Plaintiff had sent to Kansas Governor Laura Kelly which were then sent to KDOC Classification and Case Management Administrator, Meghan Davis, for response to Plaintiff on the concerns and allegations of his letter. (Exhibit 4). This letter included the allegations of the excessive use of force by LCF staff resulting in an

injury on March 13, 2025. (Id.). Ms. Davis had received the letter from the Governor's Office on or about May 7, 2025. (Exhibit 18, ¶ 8 and 9). She was also unable to find records of the incident, movement on March 13, 2025, or reports of injury to Plaintiff. (Id., ¶ 11 – 12). Ms. Davis responded on May 16, 2025, in a letter to Plaintiff which echoed her findings. (Exhibit 4).

Plaintiff then sent another letter to Governor Laura Kelly again, this letter was dated July 12, 2025, with some copies of some other papers. (Id.). Again, Ms. Davis sent a responsive letter back dated July 29, 2025. (Id.) This ended in another letter sent directly to Ms. Davis from Plaintiff, dated August 13, 2025, again mentioning the alleged use of force for March 13, 2025, which resulted in injury. (Id.).

## CONCLUSION

Plaintiff claims he suffered cruel and unusual punishment related to an alleged use of force from March 13, 2025, at LCF. The request for video footage was not timely; thus, no footage can be found. Contrary to Plaintiff's assertion, KDOC documentation provides no record of the use of force having occurred on March 13, 2025, or record of injury from use of force.

Respectfully submitted,

*Victoria L. Waters*
Victoria L. Waters, KS No. 29010
Legal Counsel
Kansas Department of Corrections
714 SW Jackson St., Suite 300
Topeka, KS 66603
Tel: (785) 670-0019
Email: Victoria.Waters@ks.gov

EXHIBIT LIST

1. KASPER Profile for Ryan Christopher Cheatham #2000064842 – DOB Redacted
2. Medical Records of Ryan Christopher Cheatham – Provisionally Sealed
3. Grievance documents
4. Letters
5. Resident movement record of Ryan Christopher Cheaham in March 2025
6. K.A.R. 44-15-101
7. K.A.R. 44-15-101a
8. K.A.R. 44-15-102
9. K.A.R. 44-15-106
10. Internal Management Policy and Procedure 01-113D
11. Internal Management Policy and Procedure 12-111A – Provisionally Sealed
12. Affidavit of Dr. Bryan Wilson
13. Affidavit of Jerry Barton
14. Affidavit of Nathan Hoag
15. Affidavit of Jeremy Jewell
16. Affidavit of Darcie Holthaus
17. Affidavit of Lindsey Wildermuth
18. Affidavit of Meghan Davis

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing REPORT IN "*MARTINEZ VS AARON*" INVESTIGATION was placed in inter-facility mail this 30 day of January 2026, to:

Ryan Christopher Cheatham, #2000064842
El Dorado Correctional Facility
P.O. Box 311
El Dorado, KS 67042
Plaintiff *pro se*

      /s/ *Victoria L. Waters*
      Victoria L. Waters