IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID L. WOODWARD,<br>Plaintiff,<br><br>v.<br>JEFF ZMUDA, et al.<br>Defendants. | )<br>)<br>)<br>) CASE NO. 25-03110-JWL<br>)<br>)<br>)<br>) |

### AFFIDAVIT OF LINDSEY WILDERMUTH

I, Lindsey Wildermuth, being of lawful age, make the following declaration pursuant to 28 U.S.C. § 1746 relating to the captioned matter based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment.

1. My name is Lindsey Wildermuth, a Corrections Manager II for the Kansas Department of Corrections (KDOC) out of Lansing Correctional Facility (LCF) in Lansing, Kansas.
2. I have been employed in the above capacity since January, 2023. I have been employed with KDOC since March, 2005.
3. Presently, I work at the East Campus at LCF. Before working at East Campus, I worked in the restrictive housing units from January, 2023 to October, 2025.
4. As part of my duties during my time stationed in LCF restrictive housing units, I was responsible for the day-to-day operations of restrictive housing. The placement of residents in restrictive housing and the status the resident was placed on. I conducted daily restrictive housing review boards as well as determined the length of time each resident spent in restrictive housing.
5. The matters stated in this affidavit are based on my personal knowledge and review of the records of offender, Ryan Christopher Cheatham, KDOC #2000064842, as maintained by the Kansas Department of Corrections (KDOC).
6. I am aware Mr. Cheatham has made a complaint against KDOC and staff for alleged excessive use of force by KDOC staff.

**Exhibit 17**

7. I am aware Mr. Cheatham has made these complaints regarding his time residing at LCF. I am aware he was transferred from LCF to Larned State Correctional Facility (LSCF) on or about March 18, 2025. I am also aware Mr. Cheatham is now residing at El Dorado Correctional Facility.

8. Around May 2025, I became aware that Mr. Cheatham claims LCF "black suits" used excessive force while handcuffing him on March 13, 2025, resulting in the splitting of his forearm muscle among a list of his other complaints after Classifications and Case Management Administrator, Meghan Davis, contacted me asking if I was aware of such claims and if I had any information on them.

9. While assigned in restrictive housing for LCF, I had Mr. Cheatham in my unit and under my supervision from January 21, 2025, until he was transferred to LSCF on March 18, 2025.

10. While I had him for those short months, I had brief interactions with Mr. Cheatham. During these interactions, not one time did he report to me any injuries inflicted by LCF staff. Additionally, none of my restrictive housing staff reported to me having been told of any injuries to Mr. Cheatham by SORT/SST, nor did they report to me, themselves, having observed any injuries to Mr. Cheatham from SORT/SST.

11. During his brief time in my restrictive housing unit, I also did not observe any injuries to Mr. Cheatham. Had I personally observed injuries to Mr. Cheatham or heard of Mr. Cheatham having sustained injuries, I would have requested he be treated by the onsite medical staff at LCF.

12. I do recall that while Mr. Cheatham was in my restrictive housing unit, he was very hostile and uncooperative with staff. It was not uncommon for Mr. Cheatham to hold the food port to his cell hostage to cause a safety and security problem of an unsecured food port. Creating a dangerous and unsafe environment for both staff and other residents.

13. When a resident refuses to allow staff to secure a cell food port and the situation cannot be resolved by restrictive housing staff, then SORT/SST would have to be called to assist in getting the food port secured. An incident report would then be made regarding the matter and document the outcome of the interaction with the resident.

14. I searched through my notes and records and did not find any reports or notifications of a use of force with Mr. Cheatham on March 13, 2025. More specifically, I did not find any

reports of any injuries sustained by Mr. Cheatham on March 13, 2025, by use of force from LCF staff.

15. Had an incident occurred in which SORT/SST used force against Mr. Cheatham that resulted in injury to him, an incident report would have been made, and I would have received a notification of such incident.

16. Due to Mr. Cheatham's placement in restrictive housing, he would have been required to be hand cuffed for any movement to or from his cell. Mr. Cheatham's resident records do not show any cell movement to or from where he was celled on March 13, 2025. His resident records do not show any Administrative Restrictive Housing (ARH) status changes for March 13, 2025, either.

17. If Mr. Cheatham was moved/required handcuffing while in restrictive housing on March 13, 2025, his resident records would have shown his movement from one cell to another and/or housing status change.

18. I do not personally know Mr. Cheatham and have only worked with him in my professional duties for KDOC. The information provided herein is done so within the scope of the duties of my position of employment with KDOC and not in any personal or non-business capacity.

Pursuant to 28 U.S.C. § 1746, the above statements are true and based upon my personal knowledge to which I am competent to testify at trial. I declare, certify, verify, and state under penalty of perjury under the laws of the United States the foregoing is true and correct.

FURTHER AFFIANT SAYETH NOT

_Lindsey Wildermuth_        1-29-2026

Lindsey Wildermuth, Corrections Manager II      Date
Kansas Department of Corrections

Exhibit 17