IN THE UNITED States District Court
FOR THE DISTRICT of kansas.

Ryan Cheatham
  Plaintiff.
V.
Jesse Howes
  Defendant et al.

5:25-cv-03091-JWL

Submitted for E-file
3-23-26.

(1 of 15)
plus 19 Exh.

Plaintiff

MEMORANDUM of Law in Support of
his Judgment on the pleadings in Alternative
Motion FOR Summary Judgment.

Comes now Plaintiff Ryan Cheatham and hereby provides
this Memorandum of Law in Support of his Motion for
Judgment on the pleadings and or Alternative Motion for
Summary, in support plaintiff Proffers;

1. Background of case. Plaintiff Ryan Cheatham
on March 13. 2025 while at the Lansing Correctional
Facility was coming back from a strip search in the shower
Area of A4 cell house, when returing to his cell 122
Plaintiff stuck his arm out the food port to finish being
un-cuffed and officer Barton and officer Hoag, pulled
extremley had on the free cuff that hung, and the top of
food port dug into plaintiffs forearm leaving a Muscle    (1)
displacement. resident Taggart lee witnessed Said events and
received a disciplinary write up on date mentioned. Lee was plaintiffs.

Plaintiffs cell mate on March 13. 2025.

II. Legal standard: Judgment on the Pleadings is appropriate only when the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to a Judgment as a matter of law." Sander v. Mountain Am. Fed. Credit Union, 689 F.3d 1138, 1141 (10th cir. 2012) (quoting Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA, 442 F.3d 1239, 1244 (10th cir. 2006), abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 Fed. Appx. 750, 753 (10th cir 2013).

In the Alternative, Plaintiff moves for Summary Judgment under Rule 56 of the Federal Rules of Civil procedure. Under Rule 56, the court shall grant summary judgment if "there is no genuine dispute as to any material fact and [movant] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).

III. Plaintiff's Argument

Defendants Jerry Barton and Nathan Haag Both Deny Any interactions with Plaintiff on March 13. 2025. See defendants Affidavits submitted in the Martinez Report by defendants, Exh. 13. And Exh. 14. Futhermore Lindsey widermuth states there was no reports of any movement outside Plaintiffs cell, (2.)

Cell on March 13, 2025, that would require Plaintiff to be handcuffed, See her Affidavit submitted by defendant's for the Martinez Report. Also Megan Davis states there was Never No Reports of any Use of force from March 13, 2025 or Any incident of Plaintiff being pulled through the food port, All Mentioned staff claim that the allegations couldn't of happened because there was no "interaction with Plaintiff on March 13, 2025, and there was No Reports of Any that existed requiring Plaintiff having Movement from outside his cell. Plaintiff provides Exhibit Taggart Lee Disciplinary Report, that Shows defendant "Jerry Barton's" name as the reporting officer / Staff user of issuing a disciplinary Report to plaintiff's Cell mate Taggart Lee on March 13, 2025. The Exhibit shows a Executed date of 3-13-25 at 12:20Am meaning officer Barton stayed after his -2-10 shift to write this report. This Report was written for "Dangerous Contraband" with a location of A4 cell house, with a official case # showing ( 25-797943 )                                                     (3.)

Exh. Taggart Lee's Disciplinary Report isn't the official document, However is a Summary of the Disciplinary Report of case # 25-797943. Thus substantiating that officer Jerry Barton did have interaction with Plaintiff on March 13. 2025, as resident Lee was plaintiff's cell mate in a restrictive Housing cell house. Contrary to all defendants position in there Affidavits submitted for the "Martinez Report". Officers Jerry Barton had interaction with Plaintiff on March 13.2025, also there was a Report of Movement outside of plaintiff's cell requiring him to be hand cuffed. Futhermore the official Disciplinary Report will show officer Nathan Hoag as a witness to the report written by officer Jerry Barton on March 13, 2025, thus substantiating officer Nathan Hoag having interaction with Plaintiff on March 13. 2025 - Plaintiff's Affidavit, Taggart Lee's Affidavit, Lees Disciplinary Report All Substantiate Plaintiff's Claims as being truthful. Another way of saying it is the weight of the preponderance of evidence Favors the Plaintiff as being more credible then the Defendants.          4 of 15 (4.)

- Conclusion of Plaintiff's Argument -

Plaintiff's uncontroverted Facts establish that Both officer Jerry Barton and officer Hoag had interaction with Plaintiff on March 13. 2025. resident Lee whom was plaintiff's cell mate on March 13. 2025 received a Disciplinary Report issued by Jerry Barton on March 13. 2025. That restrictive housing IMPP 10-102 States under the Procedure Section, (# 2.) Special Management residents Shall be escorted by a minimum of two (2) Staff. this IMPP. futher establishes that though officer Hoags name isn't Seen on the provided Summary of Exh. Taggart Lee's Disciplinary Report, There had to be another officer present if Lee and cheatham was removed from their cells to be Strip searched. IMPP. 12-103D states a prior approval to conduct a strip search shall be made by a Shift supervisor or a higher authority thus Proving that the had to be evidence of Movement outside of plaintiff's cell on March 13, 2025, other than Lee's Disciplinary Report. Exhibit Taggart Lee's Disciplinary Report Serves as "Direct evidence

which is Defined as" evidence which if believed, proves the existence of a fact in issue without Inference or presumption See Riggs V. AirTran Airways, inc. 497. F.3d 1108, 1117 (10th Cir 2007)("Direct evidence is evidence, which if believed, proves the existence of a fact in issue without Inference or presumption." (quotation omitted)). Establishing that Both officers did have interaction with Plaintiff on March 13, 2025, Contrary to their positions of NOT in their Affidavits Submitted in the Martinez Report. Exhibit Taggart Lee Disciplinary Report is the "Smoking Gun" in this case.

## IIII. Arguement And Authorities

The Eighth Amendment's prohibition against "cruel and unusual punishments" applies to the treatment of inmates by prison officials. See Whitley V. Albers, 475 U.S. 312, 319-21 (1986). Prison officials Violate inmates Eighth Amendment rights when they subject them to the (6.) "unnecessary and wanton infliction of Pain"

Id. at 319. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and unusual Punishments Clause, the core Judicial inquiry is ... whether force was applied in good-faith effort to maintain or restore discipline or Maliciously and Sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 6-7 (1992) (citation omitted)." The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from Constitutional recognition de minimis uses of physical force, provided that the use of force is not of a Sort 'repugnant to the Conscience of mankind." Id. at 9-10.

Plaintiff must prove both an Objective Component and Subjective Component to Succeed on an excessive force Claim." Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003). To establish the objective Component, Plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a Constitutional Violation." Id. Not every isolated battery

(7.) 7 of 15

or injury to an inmate amounts to a federal constitutional violation. See Hudson, 503 U.S. at 9 (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a Judge's chambers, violates a Prisoner's Constitutional rights")).

Other courts have held that: Slamming a person's arm in a (likely metal) food tray slot is objectively harmful and it is ~~recordia~~ difficult, without more detail, to infer how such action would be related to a good faith effort to restore or maintain discipline. See e.g, Williams v. Woodson, 2016 WL 4539660, at *6 (M.D. Ga Aug. 30, 2016), report and recommendation adopted, 2016 WL 11658951 (M.D Ga Sept. 26, 2016 (finding that allegations that correctional officer repeatedly slammed the cell door tray flap on Plaintiff's arms were sufficent to state a claim for excessive force in violation of the            (8.) 8 of 15

Eighth Amendment); Driver v. Novy, 2015 WL 9463180, at *3 (S.D Ga Dec. 28, 2015) holding that allegations that Correctional officer twisted his arm and slammed the tray flap against his arm were sufficient to state a claim for excessive force in violation of the Eighth Amendment). Baker v. GEO Lawton Corr. Facility, 2024 WL 4720294, at *3 (W.D. Okla. Jan. 22, 2024), report and recommendation adopted in part, 2024 WL 4512338 (W.D. Okla Oct. 17 2024.).

**A** • Plaintiff can Meet both objective Component and Subjective Component as followed. (1.) pulling the free cuff extremely hard while the other hand cuff was still on plaintiff's right wrist to the point of the Top of the food port cause a muscle displacement /indention into plaintiff's forearm that can still be visibly seen on 3-20-26 a year later Shows this action was harmful.

• **B.** Plaintiff can Meet the Subjective Component by officer Jerry Barton and officer Nathan Hoag denying All interactions with (9.)dis

Plaintiff on March 13. 2025, this establishes these defendants sufficiently Culpable state of mind, showing guilt, of and using force Maliciously and Sadistically for the very purpose of causing harm, rather than in a good faith to maintain or restore discipline. These officers denying interactions with Plaintiff knowing they had interactions and issued a disciplinary Report to plaintiffs Cell mates shows the culpable mind state of their Blameworthiness, culpability to the situation, and plaintiff's allegations.

Exhausting Administrative Remedys.

Pursuant to 42 U.S.C 1997 a prisoner must Exhaust his administrative remedies before bringing a civil action. but need not Exhaust unavailable ones Ross v. Blake. 578 U.S 632.
         Plaintiff asserts that No available Remedies Existed as all administrative staff Claim there was No Reports of any Movement outside Plaintiffs cell on March 13. 2025. Staff    ( 10. )10 of 15 Claim there was No Reports of any Incident or

or reports of any use of force on March 13. 2025. Staff's position was this incident Never happen. See Affidavits of Jerry Barton. Nathan Hoag, Megan Davis, Lindsey Wildermuth, submitted for the "Martinez Report".

The Exhausting requirement hinges on the availability of administrative remedies: an inmate that is, must exhaust available ones " Ross V. Blake, 578 U.S 632.
An administrative Procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a Simple dead end- with prison officers unable or Consistently unwilling to provide any relief to aggrieved inmates. Ross V. Blake, 578 U.S. 632.

SEE Doc. 70 and Attachments/ Exhibits, Plaintiff followed the instructions to file a normal grievance following the denial of his emergency grievance. See Exhibit "A" of Doc.70. Darcie Holthaus CMII, states "We have asked that the facility Larned Correctional ) Process your grievance as a regular grievance.

11 of 15

(11.)

She also states "your grievance is being forwarded to the warden of the facility where you are now housed for review". The response was dated March 28 2025. However Plaintiff didn't receive the response until 5-6-25 see unit-team porkorski's signature bottom page Exhibit "A".

Top page is a sticky note from Penny Riedal who tells Plaintiff she is going to forward My Paper grievance Back to Lansing despite the facility Plaintiff currently at suppost to be the ones processing plaintiff's grievance as stated by Darcie Holthaus, Riedal sends it back to Lansing. See Exhibit "C" Penny Riedal again states to file another grievance and she will send it to Lansing "since it happened at that facility. See Exhibit "G" showing a receipt I turned in a level "1" Grievance to staff to be given to penny Riedal on 5-9-25. See Exhibit "B" Plaintiff's form 9, Asking where is the Grievance that Plaintiff submitted on 5-9-25, Penny Riedal states she didn't receive Any grievance from Plaintiff to go (12.) 12 of 15 to Lansing Correction Facility. Contrary to Exh. G.

Next Plaintiff moves forward to Level 2 grievance to warden Easley of the larned Correctional facility, since Plaintiff was informed by Darcie Holthaus that she ask Current facility to review plaintiff Grievance See Exh. A, SEE Exh. "E" receipt and date of 7-11-25, Grievance Level 2, Also See Exh. "E" letter to Easley. Sticky note bottom page Shows Riedals response "Sent to Lansing 7-18-25 Contrary to stamp date of Aug 05 2025. and date of final Answer 8-8-25 Plaintiff Request to Penny Riedal when was level 2 grievance sent to Lansing on 7-21-25, See Exh. "H". I believe that the sticky note on Exh. "E" was Riedal stating grievance Sent on 7-18-25, Plaintiff Moved forward to level 3 grievance to Secretary of corrections on July 28. 2025, SEE Exhibit "I" form 9, and form 9 receipt. Last Plaintiff did not receive Any response from Lansing until 8-27-25, See Exhibit "D" and unit-team Graham's Signature Stating date Plaintiff Signed to receive response. Time line Proves Plaintiff Attempts to Exhaust his ( 13 ) 13 of 15 Remedies, and dead ends by staff, and thrauts

to exhaust by Staff. See Plaintiffs' Exh. Exhausted Remedies page Show all receipts / levels of submitted grievances.

An Administrative Scheme might be so opaque that it becomes, Partically speaking, in capie of use. In this situation Some Mechanism exists to provide relief, but no ordinary prisoner can discern or Navigate it, When rules are so confusing that No reasonable Prisoner can use them, they no longer are available. When an administrative process is Susceptible of multiple reasonable interpretations, Congress has determined that the inmate Should err on the side of exhaustion. But when a remedy is essentially unknowable - So that No ordinary Prisoner can make Sense of what it demands - then it is also unavailable.

'An Administrative remedy is not available when prison administrators thwart inmates from taking advantage of a grievance process through Machination, Mis representation or intimidation. Ross V. Blake, 579 U.S 632.

14 of 15 (14)

Penny Riedal in Plaintiff's other case
Cheatham v. Easley 5:25-CV-03241
gives a fabricated explanation on the late
Response to grievances filed by plaintiff that
wasn't forwarded to Lansing and only had to
do with issues with Larned Correctional, its
Ironic how the issue with answering grievances
keep occuring with this individual Riedal.
See her Affidavit in mentioned case, so
in the Martinez Report.

- Conclusion - Plaintiff Moves this court for
Judgment on pleadings or Alternative Summary
Judgment, as defendants have No rebuttal
to the "Smoken Gun" Lee's Disciplinary Report.
Defendants cannot come back now and state anything
other then what was stated in the Affidavits
Mentioned. thus No Material Fact exist.
a trial will waste the courts time and
resources. Plaintiff should be granted relief by
law. Plaintiff request Max Amount of
damages.

Respectfully
Submitted                          2000064847.
                                        15 of 15.
                                       (15.)