**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **RYAN CHRISTOPHER CHEATHAM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 25-3091-JWL** |
| ) | |
| **JESSE HOWES, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

<u>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**</u>

Defendants Jerry Barton and Nathan Hoag ("Defendants"), through Assistant Attorney General Davida L. Ogletree, offer this Reply in support of their Motion to Dismiss or, in the Alternative, for Summary Judgment. (Doc. 79).

**RESPONSE TO PLAINTIFFS PROPOSED STATEMENT OF FACTS**

Defendants provide the following response to Plaintiff's State of Facts submitted with his Response. (Doc. 87).

1.      Plaintiff filed a emergency grievance to the Secretary of Corrections and receive a response by "<u>Darcie Holthaus</u>" state Plaintiffs emergency grievance was going to be "<u>processed as a regular grievance</u>" See Doc. 70, Doc. 70-1, Exhibit "A"

**Response:**      Admitted in part, disputed in part. The Plaintiff sent an Emergency Grievance to the Secretary of Corrections that was received on March 27, 2025 and a response by Darcie Holthaus was provided that was dated March 28, 2025 stating the matter did not qualify as an emergency grievance. This is substantially the same facts that were included in Defendants SOF ¶¶ 1-4. Plaintiff selectively quotes from the document for the remainder of the Plaintiff's SOF ¶ 1 stating that "Plaintiffs emergency grievance was going to be processed as a regular grievance."

Plaintiff References to Doc. 70-1, Exhibit A which states, "Your grievance is being forwarded to the Warden of the facility where you are now housed for review and response in accordance with KAR's 44-15-106, 44-15-101(d)(1) and 44-15-102(b). We have asked that the facility process your grievance as a regular grievance."

2.      The Emergency grievance was dated March 28, 2025, showing Holthaus response, However Plaintiff received the document on May 6, 2025. SEE bottom page of Exhibit "A" of Doc. 70, 70-1, SEE Unit-team Porkorski signature.

**Response:**      Stipulated for purposes of this motion only that that a copy of the response letter sent by Darcie Holthaus with a note indicating receipt by the Plaintiff on May 6, 2025, was attached to the undated grievance numbered AA 2026 016 that was received on August 5, 2025 by the warden. The signature is not legible and does not establish the identity of the individual that signed the portion indicating it was returned on 5-6-25. See, Defendants SOF ¶¶ 5, 15 and 17; Doc. 54-3 pg. 14.

3.      Holthaus Response indicates that that Plaintiff Grievance would be <u>processed</u> and considered as a "<u>normal Grievance</u>" and was forwarded to the <u>Warden</u> of the <u>facility</u> where Plaintiff was being house for <u>Review</u>.

**Response:**      Duplicate of Plaintiff's SOF ¶ 1. The Plaintiff sent an Emergency Grievance to the Secretary of Corrections that was received on March 27, 2025 and a response by Darcie Holthaus was provided that was dated March 28, 2025 stating the matter did not qualify as an emergency grievance. This is substantially the same facts that were included in Defendants SOF ¶¶ 1-4.

Plaintiff selectively quotes from the document for the remainder of the PSOF ¶ 1 stating that "Plaintiffs emergency grievance was going to be processed as a regular grievance." Plaintiff

References to Doc. 70-1, Exhibit A which states, "Your grievance is being forwarded to the Warden of the facility where you are now housed for review and response in accordance with KAR's 44-15-106, 44-15-101(d)(1) and 44-15-102(b). We have asked that the facility process your grievance as a regular grievance." The fact is not support by reference to the record.

4.      Penny Riedal on Exhibit "A" of Doc 70, 70-1, states on <u>sticky notes "for Shawn"</u> If Mr Cheatham wants to file a "<u>Paper Grievance</u>" I will forward it to Lansing.

**Response:**     Stipulated for purposes of this motion only that on Doc. 70-1, Exhibit A there appears to be a sticky note signed by "Penny" stating that if Plaintiff fills out a paper grievance against Lansing, "my office" will forward it. Doc. 70-1, Exhibit A does not include the last name for the Penny and to the extent Plaintiff relies on the document for this fact it is not established.

5.      Shawn Porkorski is a unit-team/was a unit-team staff at Larned correctional Facility. See signature bottom of page of "Ex. A" Doc. 70, 70-1.

**Response:**     Denied. Doc. 70-1, Exhibit "A" is signed "CC II…" and the remaining signing is indecipherable.

6.      On 5-9-25 Plaintiff followed Penny Riedals instructions to submit a "<u>Paper grievance</u>" so that she would forward to Lansing. This was not a "emergency grievance" see Exhibit "B" Attachment form 9, and at Doc. 70, 70-1. Plaintiff asking Reidal where his "<u>Paper form Grievance</u>" and she states "as I discussed with you – my office did not receive any grievance from you for (LCF) (Lansing Correctional Facility). "It will be searched for and I will let you know if it is found by anyone, in addition to checking with case mgt. staff

**Response:**     Controverted. The fact is irrelevant and does not dispute any of the facts alleged by the Defendants. Stipulated for purposes of this motion only, it appears the Plaintiff reached out on June 29, 2025, to determine the status of a grievance he alleges was submitted on May  9,

2025. This fact, if true only goes to prove the point that Plaintiff had not followed up to exhaust his administrative remedies prior to filing the case. All of these communications are alleged to have occurred after the case was filed on May 12, 2025. DSOF #7.

7.      Plaintiff's proof of submitted "paper form Grievance" to be forward to (LCF.) Lansing Correctional Facility) Exhibit "G" of Doc. 70, 70-1, Grievance Receipt.

**Response:**     Stipulated for purposes of this motion only that Doc. 70-1, Exhibit G is a grievance receipt dated May 9, 2025.

8.      Plaintiff moves forward to the warden of the facility he was being housed at, as stated by Holthaus in a response in "Exhibit A" Doc 70, 70-1, that the current facility was asked to process grievance and review. See Exhibit "E" a grievance receipt showing level "2" to Warden Easley and also see Exhibit "E" letter to Easley both Exhibits Doc. 70, 70-1.

**Response:**     Controverted. The document included in the Martinez report was received on August 5, 2025, and responded to on August 8, 2025 by Gloria Geither as acting warden at LCF. Doc. 54-16 ¶ 16. This paragraph is substantially similar to DSOF ¶ 15 supported by Doc. 54-3 at 9, which is the same as Plaintiff's Doc. 70-1 Exhibit E.

9.      Riedal attaches Sticky Note on Exhibit "E" and or Exhibit "E" letter to Easley, stating Grievance forwarded to Lansing on 7-18-25 Contrary to the "Stamp" date of Aug 05 2025 and date of final decision/Answer 8-8-25

**Response:**     Controverted. Doc. 70-1 Exhibit E does not establish that "Riedal" attached anything to either document. DSOF ¶ 15 is supported by Doc. 54-3 at 9, which is the same as Plaintiff's Doc. 70-1 Exhibit E. On both documents there is a notation stating the document was forwarded to LCF on 7-18-25. This forwarding date does not otherwise disprove the receipt date of August 5, 2025 and Final Answer date of August 8, 2025 evidence on Doc. 54-3 at 9. Nor

does it identify the individual forwarding the document.

10.      Plaintiff ask Penny Riedal when was level "2" grievance sent to Lansing correctional on 7-21-25. See Exhibit "H" Doc 70, 70-1. Sticky note state on 7-18-25.

**Response:**      Controverted. Fact is not material to exhaustion of administrative remedies. Plaintiff fails to support the fact as he references to Doc. 70-1 Exhibit H, but there does not appear to be a document labeled Exhibit H. There are a number of documents labeled Exhibit I, the last page of which includes an Inmate Request to Staff Member Receipt to Penny Riedal dated 7-21-25.

11.      Plaintiff moved forward with Level "3" grievance to the Secretary of Corrections on July 28, 2025. See Exhibit "I" form 9 and receipt Doc. 70, 70-1.

**Response:**      Stipulated for purposes of this motion only. This paragraph is substantially similar to DSOF # 12 and 13 that rely upon 54-3, 7-8. Furthermore, it supports the Defendants motion as it concedes the Plaintiff did not exhaust administrative remedies prior to filing the case on May 12, 2025. DSOF # 7.

12.      Plaintiff did not receive Any Response from Lansing until 8-27-25, See Exhibit "D" unit-team Graham signature bottom of page Please note this a Original Document to defendants Exhibit submitted by them in the Martinez Report, their document is a Copy only and doesn't show date and signature when plaintiff received it. Plaintiff also can provide another copy with Graham signature too.

**Response:**      Controverted. Fact not supported by referenced document in the record. The Exhibit D referenced is presumably 70-1, Exhibit D, but Plaintiff attached a different Exhibit D to his Response. Doc. 87-3. Two documents are included as Exhibit D, Doc. 70-1, that appear to be an Original and Copy. The Original includes the statement, "Inmate Cheatham received this

copy on 8-27-25." There is a signature but it is indecipherable.

13.     Plaintiff also provide 4 addition attachments that show form 9 questions and responses to Penny Reidal, that may be duplicates to Doc. 70, 70-1 Exhibits. Plaintiff is submitting this motion and unit-teams have Plaintiff Exhibits. (13.) is court to take note.

**Response:**     Does not establish a material fact. Nor is it supported by citation to the record. States that items were attached to Response. They may be Exhibit "B".

14.     Plaintiff at all times followed staff's instructions as to the Exhaustion of his Administrative remedies, and or attempts to exhaust.

**Response:**     Controverted. Fact is not supported by reference to materials in the record under Rule 56 (c)(1)(A).

15.     Plaintiff's efforts to Exhaust Administrative remedies was thwarted by way of machination and misrepresentation.

**Response:**     Controverted. Fact is not supported by reference to materials in the record under Rule 56 (c)(1)(A).

16.     Ultimately Plaintiff didn't have any available remedies.

**Response:**     Controverted. Fact is not supported by reference to materials in the record under Rule 56 (c)(1)(A).

17.     Plaintiff didn't label paper form Grievances submitted to be forwarded to Lansing as emergency. See all exhibits. See Declaration of Plaintiff Doc. 70, 70-1.

**Response:**     Controverted. This not a relevant fact for purposes of resolving the question of whether he exhausted his administrative remedies prior to filing this case. Fact is not supported by reference to materials in the record under Rule 56 (c)(1)(A). It is not stated, but it could be inferred that Plaintiff is seeking to establish this fact to dispute DSOF #12. DSOF #12 is based

upon Doc. 54-3 at 7-8. This grievance appeal was called an emergency grievance in the response letter because there was no evidence that the Plaintiff had submitted the grievance to the facility prior to escalating it. Doc. 54-3 at 7-8.

18.    Under K.A.R. 44-15-101 44-15-106 states a prisoner may pursue a grievance through "three levels" of administrative review; namely, the unit-team, the warden, and the Secretary of Corrections. See 44-15-101, 44-15-106. (Inmate Rulebook of KDOC.)

**Response:**    Controverted. This is not a fact but a legal conclusion. Fact is not supported by reference to materials in the record under Rule 56 (c)(1)(A).  Defendants acknowledge K.A.R. 44-15-101 sets for the inmate grievance procedure, informal resolution, and formal levels. Defendants acknowledge K.A.R. 44-15-106 sets for the emergency grievance procedure.

19.    Under K.A.R. 44-15-101 – 44-15-106. The regulations provide that if a prisoner does not receive a timely response to a grievance, the prisoner may proceed to the next level of review. *Shipman v. Sebelius,* No. Civ A 04-3295-SAC. 2006 WL 2795714, at *1 (D. Kan. Sept. 27, 2006).

**Response:**    This is not a fact but a legal conclusion. Fact is not supported by reference to materials in the record under Rule 56 (c)(1)(A). Defendants acknowledge K.A.R. 44-15-101b and 44-15-102 govern the timeframes for filing, responding, and appealing inmate grievances.

## DEFENDANTS STATEMENT OF MATERIAL FACTS AS TO WHICH NO GENUINE ISSUE EXISTS

1.  **Plaintiff Response:** Admits.

2.  **Plaintiff Response:** Admits

3.  **Plaintiff Response:** Plaintiff objects to the fact as irrelevant. Plaintiff alleges Officer Barton slammed him against a wall as part of his Second Amended Complaint on pg. 3.

That this allegation was not included in any of the grievances is a material fact in determining whether the Plaintiff exhausted his administrative remedies for that allegation. Plaintiff states he controverts DSOF ¶ 3 with his Declaration, but it only reasserts the allegation and does not offer evidence that contravenes the plain language of all of the grievances which do not include the allegation he was slammed against a wall by Officer Barton. DSOF # 3 and 16.

4. **Plaintiff Response:** Plaintiff admits

5. **Plaintiff Response:** Plaintiff alleges it is irrelevant and controverted but does not cite to any support in the record to dispute the fact. Plaintiff has failed to controverted under Rule 56 (c).

6. **Plaintiff Response:** Plaintiff admits they are not attempting to exhaust administrative remedies with these letters. Plaintiff also objects as irrelevant. Defendants included the facts and letters to counter any arguments from the Plaintiff that they were part of his efforts to exhaust.

7. **Plaintiff Response:**   Objection. Plaintiff is required to exhaust administrative remedies prior to filing his Petition. Plaintiff objects stating that reference to the case docket is not admissible evidence, and then states, without reference to support, that he filed two amended complaints. The evidence of his amended complaints would be the case docket as they are Docs. 18 & 34). The amended complaints do not cure his failure to exhaust prior to filing. Court may take judicial notice of the case docket and they are materials in the record. Rule 56 (c)(1)(a).

8. **Plaintiff Response:**   Plaintiff admits.

9. **Plaintiff Response:**   Plaintiff admits the letters are not his attempt at exhaustion of

administrative remedies.   Furthermore, pursuant to the United States Court of Appeals, Tenth Circuit ruling in *Breedlove v. Costner,* 405 F. App'x 338 (10th Cir. 2010),  "district court could rely on *Martinez* report to ascertain whether there were any factual or legal bases for prisoner's claims on motion for summary judgment." Plaintiff also objects as irrelevant. Defendants included the facts and letters to counter any arguments from the Plaintiff that they were part of his efforts to exhaust.

10. **Plaintiff Response:**   Plaintiff admits the letters are not his attempt at exhaustion of administrative remedies.   Furthermore, pursuant to the United States Court of Appeals, Tenth Circuit ruling in *Breedlove v. Costner,* 405 F. App'x 338 (10th Cir. 2010), "district court could rely on *Martinez* report to ascertain whether there were any factual or legal bases for prisoner's claims on motion for summary judgment." Plaintiff also objects as irrelevant. Defendants included the facts and letters to counter any arguments from the Plaintiff that they were part of his efforts to exhaust.

11. **Plaintiff Response:**   Plaintiff admits but also objects. He states it is controverted and objected to as well.  In Doc. 8 Plaintiff stated, "Plaintiff moves this court for permission to file amended complaint as plaintiff attempts to exhaust his administrative remedies are being thwarted, or further instructions." Doc. 8 pg. 3. Plaintiff has failed to controvert.

12. **Plaintiff Response:** Controverted. DSOF #12 is based upon Doc. 54-3 at 7-8. This grievance appeal was called an emergency grievance in the response letter because there was no evidence that the Plaintiff had submitted the grievance to the facility prior to escalating it. Doc. 54-3 at 7-8. Defendants do not allege that Plaintiff labelled it an emergency grievance. DSOF # 12 established how it was processed based upon the response provided in Doc. 54-3 at 7-8.

13. .**Plaintiff Response:** Controverted. DSOF #12 is based upon Doc. 54-3 at 7-8. This grievance appeal was called an emergency grievance in the response letter because there was no evidence that the Plaintiff had submitted the grievance to the facility prior to escalating it. Doc. 54-3 at 7-8. Defendants do not allege that Plaintiff labelled it an emergency grievance. DSOF # 12 established how it was processed based upon the response provided in Doc. 54-3 at 7-8. Furthermore, pursuant to the United States Court of Appeals, Tenth Circuit ruling in *Breedlove v. Costner,* 405 F. App'x 338 (10th Cir. 2010), "district court could rely on *Martinez* report to ascertain whether there were any factual or legal bases for prisoner's claims on motion for summary judgment."

14. **Plaintiff Response:**   Controverted. Grievance received is in Doc. 54-3 pg. 7. Doc. 54-3 pg. 8 and the response provided to the grievance received, which does not include a grievance number and was note dated by the Plaintiff when it was submitted. Furthermore, pursuant to the United States Court of Appeals, Tenth Circuit ruling in *Breedlove v. Costner,* 405 F. App'x 338 (10th Cir. 2010), "district court could rely on *Martinez* report to ascertain whether there were any factual or legal bases for prisoner's claims on motion for summary judgment."

15. **Plaintiff Response:**   Controverted.  Plaintiff has not submitted any facts that dispute the facts established in DSOF #15. If even everything stated in Plaintiff's response is true and established in the record, they do not dispute the grievance number, date it was received, or any other information included in the grievance. (Doc. 54-3 pg. 9).

16. **Plaintiff Response:**   Controverted. Plaintiff's allegation from the Complaint restated in the Plaintiff's Declaration (Doc. 87-1), does not dispute the plain language of the grievance that does not include an allegation that Officer Barton slammed the Plaintiff

against the wall. (Doc. 54-16 pg. 9).

17. **Plaintiff Response:**   Controverted. Plaintiff admits the letters are not his attempt at exhaustion of administrative remedies.  Furthermore, pursuant to the United States Court of Appeals, Tenth Circuit ruling in *Breedlove v. Costner,* 405 F. App'x 338 (10th Cir. 2010), "district court could rely on *Martinez* report to ascertain whether there were any factual or legal bases for prisoner's claims on motion for summary judgment." Plaintiff also objects as irrelevant. Defendants included the facts and letters to counter any arguments from the Plaintiff that they were part of his efforts to exhaust.

ARGUMENTS AND AUTHORITIES

## I.   Plaintiff admits failure to exhaust.

The Plaintiff frames his argument against Defendants Motion on pg. 10 in paragraph 4. Plaintiff states, "Plaintiff's efforts to exhaust administrative remedies were thwarted and was not available due to machination and misrepresentation by prison administrators of the grievance process." Plaintiff concedes that they did not exhaust administrative remedies prior to filing this case and seeks to shift the blame of that failure onto others. This; however, does not follow from the facts in this case.

### A.  Plaintiff filed this lawsuit prior to exhaustion of administrative remedies.

The Secretary of Corrections received an emergency grievance submitted by the Plaintiff on March 22, 2025. DSOF #1. Darcie Holthaus sent a response informing the Plaintiff that this didn't qualify as an emergency grievance. DSOF #4. On July 2, 2025, Plaintiff admits to the Court that administrative remedies were not exhausted prior to filing his complaint. DSOF #11. Plaintiff alleges to have filed a second grievance on May 9, 2025. (Doc. 8 pg. 2 ¶ 5). Plaintiff filed his Complaint on May 12, 2025, less than three days after he alleges he submitted his grievance. DSOF #7, Doc. 1. Under K.A.R. 44-15-102, for each step of the grievance process if a

response is not provided within ten (10) days, then the complainant may within three days transmit the grievance to the next step.

Plaintiff filed this lawsuit without allowing for even the first step of the formal grievance procedure to be completed. As the Defendants argued Defendant's Motion, "Under the PLRA, a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA"). Plaintiff needed to exhaust his administrative remedies before even filing this lawsuit and the facts clearly establish they he had not exhausted them prior to filing this lawsuit on May 12, 2025. Additionally, none of the grievances filed include the allegation that Officer Barton slammed the Plaintiff against a wall. DSOF #3 and 16.

**B. Administrative remedies were available to the Plaintiff.**

Plaintiff seeks to cure his failure to exhaust administrative remedies by arguing that under the reasoning in *Ross v. Blake,* the grievance process was not available to him and there were no administrative remedies available to him. *Ross v. Black,* 578 U.S. 632, (2016).

The Courts ruling does not apply here for a few reasons. First, Plaintiff did participate in the grievance process. Plaintiff submitted an emergency grievance and received a response. DSOF #1-5. Plaintiff's alleges he submitted a second grievance on May 9, 2025, and subsequently forwarded to the Warden and Secretary of Corrections. DSOF # 12-15. Plaintiff received responses from both the Warden and Darcie Holthaus on behalf of the Secretary of Corrections. DSOF #12-13 and 15. All of these responses to his grievance occurred after Plaintiff filed this lawsuit on May 12, 2025. DSOF # 7, 12-13, and 15. The grievance process was clearly available to the Plaintiff, but he did not allow for the administrative process to be completed prior to filing this lawsuit.

Additionally, any delays that may have occurred in responses do not evidence the notion that administrative remedies were unavailable to him. Plaintiff alleges in his Response that administrative remedies were not available to him because he was given misleading information and his efforts to file a grievance were thwarted. Plaintiff alleges to have filed a new grievance on May 9, 2025, three days prior to filing this litigation. DSOF # 7 and 11, Doc. 8).

After allegedly submitting this grievance, Plaintiff makes no efforts to continue forward with the grievance process until after this Court entered its order on June 27, 2025. (Doc. 7). In the Court's Order to Show Cause, the Court indicated that, "Plaintiff's allegations suggest that he did not fully exhaust his administrative remedies prior to filing this action." (Doc. 7, pg. 19). Only after Doc. 7 was entered does the Plaintiff allege that on June 29, 2025, he reached out to find out the status of his May 9, 2025 grievance. Doc. 70-1 Exhibit I pg. 14. This was fifty-one (51) days after the Plaintiff allegedly filed the grievance, well beyond the timeframe allowed to escalate under K.A.R. 44-15-102 of three days after the ten-day response window. Nonetheless, Plaintiff admits they forwarded the grievance to the warden, which was received by the warden on August 5, 2025. PSOF #8 and DSOF #15.

Plaintiff's efforts to utilize the grievance process were not thwarted. Rather, Plaintiff filed a grievance and then filed his lawsuit without attempting to exhaust his administrative remedies. DSOF # 7. Only after the Court informed the Plaintiff that is lawsuit could be dismissed if he did not exhaust his administrative remedies did he return to attempt to complete the grievance process.

## CONCLUSION

WHEREFORE, Defendants request Plaintiff's claims be dismissed for failure to exhaust administrative remedies, the Defendants Motion to Dismiss or, in the alternative, for summary judgment be granted (Doc. 79), and for other such relief the Court deems necessary and proper.

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Davida L. Ogletree*
Davida L. Ogletree, KS No. 31004
Assistant Attorney General
James Eric Todd, KS No. 24297
Assistant Attorney General
Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
Email: davida.ogletree@ag.ks.gov
Email: james.todd@ag.ks.gov
Phone: (785)368-8452
Fax:    (785) 291-3767
*Attorneys for Defendants*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of April, 2026, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

Victoria L. Waters
Natasha M. Carter
Kansas Department of Corrections
714 SW Jackson, Suite 300
Topeka, KS 66603
victoria.wates@ks.gov
natasha.carter@ks.gov
*Attorneys for Kansas Department of Corrections, Interested Party*

I also certify that a copy will be served on the 14th day of April, 2026, by means of first-class mail, postage prepaid, addressed to:

Ryan Christopher Cheatham #2000064842
El Dorado Correctional Facility
P.O. Box 311
El Dorado, KS 67042
*Plaintiff, pro se*

*/s/ Davida L. Ogletree*
Davida L. Ogletree
Assistant Attorney General

15