**FILED**
**U.S. District Court**
**District of Kansas**
06/16/2026
**Clerk, U.S. District Court**
**By:** SND **Deputy Clerk**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RYAN CHRISTOPHER CHEATHAM,

      **Plaintiff,**

      v.                          **CASE NO. 25-3091-JWL**

JESSE HOWES, et al.,

      **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff Ryan Christopher Cheatham, proceeding pro se and in forma pauperis, brings this civil rights action under 42 U.S.C. § 1983 arising out of his incarceration at the Lansing Correctional Facility in Lansing, Kansas ("LCF"). The remaining Defendants in this action are Jerry Barton and Nathan Hoag.[1] Plaintiff alleges in his Second Amended Complaint ("SAC") that Defendants Barton and Hoag used excessive force on Plaintiff at LCF on March 13, 2025.[2] Plaintiff alleges that Officer Barton slammed him against the wall "for no reason," and Officers Barton and Hoag snatched his right arm through the food slide.[3]

This matter is before the Court on Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. 79) based on Plaintiff's failure to exhaust administrative remedies. The motion has been fully briefed, and the Court has considered Plaintiff's many filings in support of

---

[1] Although Plaintiff is currently in custody at the El Dorado Correctional Facility in El Dorado, Kansas, the claims in his Second Amended Complaint (Doc. 34) ("SAC") are based on his incarceration at the Lansing Correctional Facility in Lansing, Kansas ("LCF") and the Larned State Correctional Facility in Larned, Kansas ("LSCF"). On October 27, 2025, the Court entered a Memorandum and Order (Doc. 36) dismissing without prejudice Plaintiff's claims against the LSCF defendants, and providing that "[t]he only remaining defendants in this case are LCF Defendants Barton and Hoag." (Doc. 36, at 6.) The Court found that the claim against the LSCF defendants was unrelated, and that Plaintiff had initiated a new case against the LSCF defendants. *Id*. at 4 (citing *Cheatham v. Easley*, Case No. 25-3218-JWL (D. Kan. filed Oct. 9, 2025)).

[2] Doc. 34, at 2–3.

[3] *Id.*

1

his opposition to summary judgment.[4]   For the reasons discussed below, the Court grants Defendants' motion for summary judgment based on Plaintiff's failure to exhaust available administrative remedies.

## I.  Legal Standards

Defendants move to dismiss, or in the alternative, for summary judgment.   Because Defendants' motion largely relies on matters outside the pleadings, and because Plaintiff was provided with notice of his obligations under the summary judgment standard,[5] the Court applies the summary judgment standard in deciding this motion.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[6]  In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[7]  "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[8]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[9]   A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[10]

---

[4] *See infra* FN 29.

[5] *See, e.g.*, *Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1121 (10th Cir. 2006) (finding sufficient notice where the motion for summary judgment is raised in the alternative); *see also* Doc. 80 (Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment); Doc. 84 (the Court sent Plaintiff another copy of Defendants' motion and the notice).

[6] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[7] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citation omitted).

[8] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[9] *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ies, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[10] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[11]  Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a *genuine issue* for trial."[12]

The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[13]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[14]  In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[15]  A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[16]  In responding to a motion for summary judgment, the nonmovant cannot rest on "ignorance of the facts, on speculation, or on suspicion" to escape summary judgment.[17]

"When a defendant moves for summary judgment based on an affirmative defense, Rule 56 puts the burden on the defendant to 'demonstrate that no disputed material fact exists regarding the affirmative defense asserted.'"[18]  Once the defendant makes this initial showing, "the plaintiff must then demonstrate with specificity the existence of a disputed material fact."[19]  If the plaintiff cannot meet this burden, "the affirmative defense bars his claim, and the defendant is then entitled

---

[11] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[12] *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[13] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[14] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[15] *Adler*, 144 F.3d at 671.

[16] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[17] *Genzer v. James River Ins.*, 934 F.3d 1156, 1160 (10th Cir. 2019) (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)).

[18] *Estrada v. Smart*, 107 F.4th 1254, 1261 (10th Cir. 2024) (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997)).

[19] *Hutchinson*, 105 F.3d at 564.

to summary judgment as a matter of law."[20]

Federal courts do not view summary judgment as a "disfavored procedural shortcut."[21] Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' "[22]

In deciding this motion, the Court is mindful that Plaintiff proceeds pro se. Therefore, his pleadings are "construed liberally and held to a less stringent standard than formal pleadings crafted by lawyers."[23] However, pro se plaintiffs may not rely on conclusory allegations to overcome their burden to establish that a general issue of material fact exists.[24] The Court cannot assume the role of advocate,[25] nor can the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[26] Pro se parties must "follow the same rules of procedure that govern other litigants."[27] The Court "cannot fill the void by crafting arguments and performing the necessary legal research."[28]

## II. Uncontroverted Facts[29]

On March 22, 2025, Plaintiff sent to the Secretary of Corrections an emergency grievance that was received on March 27, 2025, by Topeka Central Office Facility Management.[30] The

---

[20] *Id*. (citation omitted).
[21] *Celotex*, 477 U.S. at 327.
[22] *Id.* (quoting Fed. R. Civ. P. 1).
[23] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).
[24] *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002) (unpublished) (citing *Hall*, 935 F.2d at 1110).
[25] *Hall*, 935 F.2d at 1110.
[26] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).
[27] *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).
[28] *Id*. at 841 (citation omitted).
[29] Plaintiff attaches grievance documents as exhibits to his Complaint, the SAC, and his Motion to Provide Plaintiff's Proof of Exhausted Administrative Remedies (Doc. 70) filed on February 20, 2026. In the Court's Memorandum and Order (Doc.72) entered on February 23, 2026, the Court granted the motion "to the extent that the Court will consider the attachments (Doc. 70–1) as part of any response that Plaintiff files to a dispositive motion on the issue of exhaustion." (Doc. 72, at 6, 9.) The Court considers these documents as part of the record. Fed. R. Civ. P. 56(c)(3) provides that the Court "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).
[30] Defendants' Statement of Material Facts (Doc. 79, at 2–5) ("Def. SOF") at ¶ 1, uncontroverted; Doc. 54–16, at ¶¶ 10–13; Doc. 1, at 2, 8.

March 22, 2025 grievance contains an accusation that while Plaintiff was housed at LCF Defendants Barton and Hoag injured Plaintiff's right arm and wrist during an uncuffing through the food port in his cell on March 13, 2025.[31] The March 22, 2025 grievance does not contain an accusation that Officer Barton slammed Plaintiff against the wall.[32]

On March 28, 2025, Darcie Holthaus, Corrections Manager II with KDOC, who also serves as designee for the Secretary of Corrections, sent a reply to Plaintiff stating his grievance does not qualify as an emergency grievance pursuant to K.A.R. 44-15-106 and that she would forward his grievance for facility level process to the Warden at Larned Correctional Facility where he was then housed.[33] The letter states that:

> We received your inmate grievance report form with written arguments. You directed this grievance to the Secretary as an emergency grievance pursuant to KAR 44-15-106. It is the conclusion of this office that the matters raised in your grievance form do not constitute an emergency. Disposition of your grievance according to the regular time limits and procedures will not subject you to a substantial risk of personal injury or cause you other serious and irreparable harm. Thus, we have concluded that you should not be permitted to bypass efforts to resolve this grievance at the facility level.
>
> Your grievance is being forwarded to the Warden of the facility where you are now housed for review and response in accordance with KAR's 44-15-106, 44-15-101(d)(1) and 44-15-102(b). We have asked that the facility process your grievance as a regular grievance.
>
> If you have questions or require assistance about the status of your grievance, please contact your unit team. Otherwise, you can expect to hear from the Warden in reply to your grievance in the near future.[34]

---

[31] Def. SOF ¶ 2, uncontroverted; Doc. 54–16, at ¶ 11; Doc. 1, at 8.

[32] Def. SOF ¶ 3; Doc. 54–16, at ¶ 10; Doc. 1, at 8. Plaintiff objects to this statement contained in Def. SOF ¶ 3, claiming it is irrelevant. However, Plaintiff's claim in his SAC includes a claim that Officer Barton slammed Plaintiff against the wall.

[33] Def. SOF ¶ 4, uncontroverted; Doc. 54–16, at ¶ 13; Doc. 34–1; Doc. 70–1, at 3.

[34] Doc. 34–1; Doc. 70–1, at 3.

The letter has handwritten notes stating "For Shawn" and a note dated May 6, 2025 stating that "If Mr. Cheatham wants to file a grievance against Lansing—He can fill out a paper grievance which my office will forward.  Thanks Penny."[35]  It also has a handwritten note stating that it was returned to the inmate on May 6, 2025.[36]

Plaintiff received the March 28, 2025 response letter on May 6, 2025.[37]  On May 9, 2025, Plaintiff followed Penny Riedal's instructions to submit a "paper grievance" so that she would forward it to Lansing.[38]  Plaintiff submits a receipt from the Unit Team as proof that he submitted the paper grievance on May 9, 2025.[39]  Plaintiff filed his Complaint initiating the instant case on May 12, 2025.[40]

On May 16, 2025, the Kansas Department of Corrections sent a reply communicating there was no record of incident reports, injuries or medical treatment from LCF on March 13, 2025 and that Cheatham should utilize "the informal and formal grievance" with any additional or further issues.[41]

On June 29, 2025, Plaintiff filled out a Form 9 "Inmate Request to Staff Member" addressed to Mrs. Riedal, inquiring about the status of his May 9, 2025 paper grievance.[42]  Plaintiff asks where his grievance is, stating that Penny Riedal told him to file a paper grievance, which he did on 5-9-25, however there was no response.[43]  The July 3, 2025 response signed by P. Riedal at the bottom of the Form 9 states: "As I discussed with you – my office did not receive any grievance from you for LCF.  It will be searched for and I'll let you know if it is found by anyone, in addition

---

[35] *Id.*
[36] *Id.*
[37] Statement of Plaintiff's Controverting Facts (Doc. 87, at 2–7 ) ("Pla. SOF") ¶ 2.
[38] Pla. SOF ¶ 6.
[39] Pla. SOF ¶ 7; Doc. 34–3; Doc. 70–1, at 10.
[40] Doc. 1.
[41] Def. SOF ¶ 8, uncontroverted; Doc. 54–4, at 8.
[42] Pla. SOF ¶ 6; Doc. 34–2; Doc. 70–1, at 4.
[43] *Id.*

to checking with case mgt staff."[44]

Plaintiff attaches his July 1, 2025 Inmate Request to Staff Member sent to Penny Riedal asking "is there anyway to get with Warden Easley on a final despotion [sic] of use of force grievance with Lansing since there [sic] beyond deadline to respond. I have until 7-28-25 with courts."[45] Riedel responded stating that "you would need to send anything to LCF since it involves that facility."[46]

Plaintiff moved forward with level three of the grievance process by sending a grievance to the Secretary of Corrections on July 28, 2025.[47] Plaintiff attaches as Exhibit F to his SAC, an Inmate Request to Staff Member dated July 28, 2025, with a handwritten notation stating "level 3 grievance forward to Secretary of Corrections against Lansing Officer Barton and Hoag, March 13, 2025 incident use of force, forearm injury."[48]

## III. Discussion

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. [49]

---

[44] *Id.*

[45] Doc. 34–4.

[46] *Id.*

[47] Pla. SOF ¶ 11; Doc. 70–1, at 11.

[48] Doc. 34–5. The document also references a grievance regarding an incident at LSCF, stating "level 3 grievance was sent via mail to Secretary of Corrections use of force July 4, 2025 Larned."

[49] 42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted).

"Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."[50] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[51]  The issue of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit.[52]

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."[53] A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein.[54]  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies."[55] "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."[56]

---

[50] *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

[51] *Porter*, 534 U.S. at 532.

[52] *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)  (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim).

[53] *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) (unpublished) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (quoting *Jones*, 549 U.S. at 211)).

[54] *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

[55] *Jernigan*, 304 F.3d at 1032 (citation omitted).

[56] *Jones*, 549 U.S. at 218.

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies.[57] "Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'"[58]

For Kansas state prisoners, the administrative remedies require the inmate to first seek an informal resolution with personnel who work with the inmate on a direct or daily basis.[59] If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member of the facility, (2) the warden of the facility, and (3) the office of the secretary of corrections.[60]  The procedure to follow at each level is described in detail in the Kansas Administrative Regulations.[61]

This Court has held that:

> The regulations do not provide for exhaustion "by default" if the informal resolution is unsuccessful. If an inmate does not receive a response to a grievance, they "may move to the next stage of the grievance procedure if a timely response is not received at any step in the grievance process." K.A.R. 44-15-101b. "If an inmate does not receive a response from the unit team within 10 calendar days, a grievance report may be sent to the warden without the unit team signature or signatures." K.A.R. 44-15-102(a)(2).[62]

There are no disputed facts as to the grievance process and responses received prior to Plaintiff filing this action on May 12, 2025.  Although the parties dispute how Plaintiff proceeded

---

[57] *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) (citing *Jones*, 549 U.S. at 216).
[58] *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (alteration in original) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).
[59] K.A.R. § 44–15–101(b).
[60] K.A.R. § 44–15–101(d).
[61] *See* K.A.R. § 44–15–102; *see also Garza v. Correct Care Sols.*, 2011 WL 2580299, at *2 (D. Kan. 2011), *aff'd* 451 F. App'x 775 (10th Cir.) (granting summary judgment for failure to exhaust claims against Correct Care Solutions where plaintiff failed to allege that he sought relief on his claims first through his unit team, then the warden, and finally from the Secretary of Corrections).
[62] *Clay v. Esparza*, 2020 WL 6117856, at *4 (D. Kan. 2020).

through steps two and three of the grievance process,[63] these disputed facts are immaterial because it is clear that Plaintiff did not exhaust prior to filing this case on May 12, 2025.  He received the rejection of his emergency grievance on May 6, 2025, and submitted his paper grievance on May 9, 2025.  Regardless of what happened at steps two and three of the grievance process, he clearly had not fully exhausted when he filed his complaint three days later.

Plaintiff acknowledged in his pleadings that he had not finished exhausting his administrating remedies prior to filing his complaint.[64]  The Court found in its February 13, 2026 Memorandum and Order that:

> Plaintiff filed this case on May 12, 2025. The Court noted in its Memorandum and Order at Doc. 7 that "Plaintiff's allegations suggest that he did not fully exhaust his administrative remedies prior to filing this action," and that based on the timing of his filing "it appears that Plaintiff did not fully exhaust his administrative remedies prior to filing this case." (Doc. 7, at 19.)  The Court found in its July 7, 2025 Memorandum and Order (Doc. 9) that Plaintiff had filed a "Motion for Permission and or Further Instructions to File Amended Complaint Despite Grievance not being Returned at Level 1" (Doc. 8). (Doc. 9, at 1.) The Court noted that Plaintiff, in his motion, seemed to acknowledge that he had not exhausted prior to filing this action, and was seeking instructions on how to finish exhaustion. *Id*. at 2.
>
> In the Court's July 22, 2025 Memorandum and Order (Doc. 16) the Court noted that Plaintiff was "attempting to wait to file his amended complaint until after he has fully exhausted his administrative remedies." (Doc. 16, at 2.) The Court found that any further extension of time to allow Plaintiff to exhaust would be

---

[63] Plaintiff claims that he proceeded to level two through Warden Easley—the warden at LSCF where Plaintiff was housed. *See* Pla. SOF ¶ 8; Doc. 70–1, at 8.  Defendants allege that the July 18, 2025 grievance was considered an emergency grievance, was received by the LCF Warden's office on August 5, 2025, and was responded to by LCF Warden Gloria Geither on August 8, 2025.  *See* Def. SOF ¶¶ 12–15; Doc. 54–3, at 9; Doc. 70–1, at 8.  Plaintiff disputes the August 5 and 8 dates, arguing that his grievance to Warden Easley was forwarded to LCF on July 18, 2025.  *See* Pla. SOF ¶ 9; Doc. 70–1, at 9.  However, the forwarding date does not necessarily disprove the receipt date of August 5 or the response date of August 8.

[64] *See, e.g.,* Doc. 8 (Plaintiff's Motion for Permission and or Further Instructions to file Amended Complaint Despite Grievance not being Returned at Level 1); Doc. 12 (Plaintiff's motion seeking additional time to file an amended complaint because he "is waiting for response to grievance regarding the use of force"); Doc. 14 (Plaintiff's "Motion for Court to Take Notice on Level 2 Grievance Forwarded to Lansing and Possible Additional Time Extension to File Amended Complaint").

futile, because the PLRA requires exhaustion *before* filing a complaint. *Id*.[65]

Despite Plaintiff's acknowledgement that he had not exhausted, he continued to argue that he merely needed to finish exhausting before he filed an amended complaint. Plaintiff submitted a surreply in which he argues that "[a] district judge can allow a plaintiff to go back and finish exhausting his administrative remedies if the court finds that exhaustion wasn't completed."[66] However, the Court advised Plaintiff in prior orders that full exhaustion was required prior to filing this action.[67] The Court cited the decision in *Sheldon* as follows:

> The law is clear that Mr. Sheldon is required to exhaust his administrative remedies—and exhaust them completely—*before* seeking judicial relief. The PLRA is unequivocal that "[n]o action shall be brought . . . *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). And "[s]ince the PLRA makes exhaustion a precondition to *filing* a suit, an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency." *Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012) (holding that plaintiff's claim was properly dismissed for failure to exhaust administrative remedies even though the prison finished its review of the incident giving rise to the plaintiff's claim by the time the case was "ripe for decision") (citations omitted; emphasis in original); *see also May*, 929 F.3d at 1229 (inmate's failure to exhaust before filing suit not cured by filing amended complaint after exhausting); *Snyder v. Harris*, 406 F. App'x 313, 317 (10th Cir. 2011) ("An inmate is not permitted to complete the administrative exhaustion process *after* he files suit.") (emphasis in original); *Little*, 607 F.3d at 1249 (under the PLRA, "a prisoner must exhaust his administrative remedies *prior* to filing a lawsuit regarding prison conditions in federal court") (emphasis in original); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a . . . claim under [the] PLRA for failure to exhaust his administrative remedies."). Courts in this district have meticulously implemented this pre-filing exhaustion mandate. *See, e.g.*, *Hill v. Ciolli*, No. 23-cv-02539-CNS-KAS, 2024 WL 2749652, at *5 (D.

---

[65] Doc. 64, at 11–12.

[66] Doc. 105, at 1. The Court notes that Defendants have objected to Plaintiff's surreply, arguing that Plaintiff did not request leave to file it. *See* Doc. 106.

[67] *See* Doc. 7, at 19–22; Doc. 23, at 3–5.

Colo. May 29, 2024); *Nellson v. Barnhart*, No. 20-cv-00756-PAB-NYW, 2020 WL 6204275, at *2 (D. Colo. Oct. 22, 2020); *Susinka v. Trujillo*, No. 19-cv-02190-PAB-MEH, 2020 WL 13849624, at *4 (D. Colo. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 13849625 (D. Colo. Sept. 22, 2020); *Soto v. Matthews*, No. 18-cv-02319-KMT, 2020 WL 1183365, at *4 (D. Colo. Mar. 12, 2020); *Jones v. Santini*, No. 17-cv-01231-PAB-MEH, 2018 WL 272178, at *4 (D. Colo. Jan. 2, 2018), *report and recommendation adopted*, 2018 WL 1224890 (D. Colo. Mar. 8, 2018); *Williams v. Wilcox*, No. 13-cv-03249-RM-CBS, 2015 WL 4881211, at *3 (D. Colo. Aug. 17, 2015); *Horton v. Davis*, No. 12-cv-00349-REB-BNB, 2013 WL 500482, at *1 (D. Colo. Feb. 11, 2013).

Importantly, the obligation to strictly adhere to the pre-filing exhaustion requirement may not be discounted as mere form-over-substance, as Mr. Sheldon suggests. As the Supreme Court has emphasized, "the benefits of exhaustion . . . include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. This court lacks authority to deprive either party of these useful benefits, nor would it be inclined to do so if afforded that discretion.

In sum, Mr. Sheldon indisputably commenced this lawsuit without waiting the required forty days for the General Counsel's response to his appeal. Because Mr. Sheldon is "not permitted to exhaust administrative remedies during the pendency of litigation," *Nellson*, 2020 WL 6204275, at *2, the court finds that he failed to exhaust his administrative remedies prior to filing this lawsuit and that he similarly has failed to sustain his burden of showing that the administrative remedy process was not available to him.[68]

This Court has also noted that "[e]xhaustion must be completed before the filing of the lawsuit, not while it is pending."[69] "Allowing an inmate to exhaust instead of dismissing his action would be contrary to the PLRA's requirement that a prisoner exhaust before he files a federal

---

[68] *Sheldon v. Bureau of Prisons*, 2024 WL 3503039, at *10 (D. Colo. 2024), *report and recommendation adopted* 2024 WL 3496826 (D. Colo. 2024).

[69] *Garza*, 2011 WL 2580299, at n.5 (citing *Porter*, 534 U.S. at 523–25).

lawsuit."[70]  Based on this reasoning, Plaintiff's argument that he could continue exhausting after he filed this case is contrary to the law.

Lastly, Plaintiff claims that his efforts to exhaust his administrative remedies were "thwarted and . . . not available due to machination and misrepresentation by prison administrators of the grievance process."[71]  The exhaustion requirement is not left to the district court's discretion but rather is mandatory, with one qualifier—the administrative "remedies must indeed be 'available' to the prisoner."[72]  "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust."[73]

Plaintiff's emergency grievance was rejected due to it not qualifying as an emergency.  In *Kidd v. Baker*, the plaintiff alleged that he filed emergency grievances.[74]  The Court concluded that the plaintiff failed to exhaust his administrative remedies, stating that "[w]hile he sent letters or 'petitions' to the Secretary of Corrections, he did not follow the established procedure."[75]  "Simply presenting a defective or non-complying grievance . . . does not constitute exhaustion of remedies."[76]

The Court can understand Plaintiff's confusion regarding the March 28, 2025 letter indicating that his grievance did not qualify as an emergency grievance.  The letter indicates that his grievance is being forwarded to the warden where he was currently housed (LSCF) for review and response, and states that "[w]e have asked that the facility process your grievance as a regular

---

[70] *Id*. (citing *Jernigan*, 304 F.3d at 1032–33).
[71] Doc. 87, at 10.
[72] *Ross v. Blake*, 578 U.S. 632, 639 (2016).
[73] *Little*, 607 F.3d at 1250 (citation omitted).
[74] *Kidd v. Baker*, 2022 WL 17485932, at *6 (D. Kan. 2022).
[75] *Id*.
[76] *Id*. (quoting *Brewer v. Mullin*, 130 F. App'x 264, 265 (10th Cir. 2005)).

grievance." However, when the letter was given to Plaintiff on May 6, 2025, it had a notation stating that if Plaintiff wants to file a grievance against LCF "he can fill out a paper grievance which [Penny's] office will forward." When Plaintiff received the letter, it was already noted that he needed to fill out a paper grievance, and that is just what he did three days later on May 9, 2025. Instead of following through with that process, he filed his complaint in this Court three days later.

Plaintiff has not shown that administrative remedies were unavailable. However, they did require extra effort because Plaintiff mistakenly started the process with an emergency grievance and Plaintiff transferred to a different facility shortly after the incident giving rise to his claims.[77] Even if Plaintiff disagrees with the determination that his grievance did not qualify as an emergency, "prisoners must complete the administrative review process in accordance with the applicable procedural rules," which "are defined not by the PLRA, but by the prison grievance process itself."[78] "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."[79]

In his surreply, Plaintiff suggests that there were no available remedies because officials had no record of the incident giving rise to his excessive force claim.[80] The Tenth Circuit has held that jail officials' denial of an incident does not preclude an inmate from filing a grievance to vindicate his rights.[81] A plaintiff's "assertion that a remedy would be 'useless in this situation,'

---

[77] Plaintiff was transferred from LCF to LSCF on March 18, 2025. Doc. 54–1, at 2; Doc. 1, at 1; Doc. 54–18, at ¶ 7; Doc. 54–16, at ¶ 7; Doc. 54–17, at ¶ 7.

[78] *Wright v. Gess*, 2023 WL 4542154, at *3 (10th Cir. 2023) (unpublished) (quoting *Jones*, 549 U.S. at 218 (internal quotation marks omitted)).

[79] *Id.* (quoting *Woodford*, 548 U.S. at 90–91).

[80] Doc. 105, at 2.

[81] *Gonyea v. Mink*, 206 F. App'x 745, 747 (10th Cir. 2006) (unpublished), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

even if true, is not sufficient to excuse the exhaustion requirement."[82]

The Tenth Circuit has explained:

> When a defendant moves for summary judgment on the basis of an affirmative defense—here, failure to exhaust—"[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." . . . Thus, the initial burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA "lies with the defendant.". . . If the defendant carries this burden, "the plaintiff must then demonstrate with specificity the existence of a disputed material fact." . . . A plaintiff's failure to meet this burden results in the affirmative defense barring his claim and entitles the defendant to summary judgment as a matter of law.[83]

Courts in this district have found that a defendant satisfies the initial burden to show that a plaintiff failed to exhaust administrative remedies where the defendant provides a KDOC records custodian affidavit that explains that they reviewed the grievance records and found evidence that a plaintiff availed himself of the grievance process but did not complete it.[84]

Plaintiff then had the burden to demonstrate with specificity that there is an issue of material fact on the exhaustion issue. However, the only disputed facts in this case relate to the continuation of the exhaustion process that occurred after this case was filed. Plaintiff failed to exhaust his administrative remedies prior to filing this action. Plaintiff continued to pursue his administrative remedies after he filed this case. "An inmate who begins the grievance process but does not compete it is barred from pursuing a § 1983 claim under the PLRA for failure to exhaust his administrative remedies."[85] "The doctrine of substantial compliance does not apply."[86]

---

[82] *Id*. (citing *Jernigan*, 304 F.3d at 1032 ("Even when the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available.").

[83] *Moore v. Tresch*, 2022 WL 612796, at *2 (10th Cir. Mar. 2, 2022) (unpublished) (internal citations omitted).

[84] *See Lewis v. Carrell*, 2014 WL 4450147, at *10 (D. Kan. 2014) (citation omitted); *see also* Doc. 54–16, Affidavit of Darcie Holthaus, acting designee for the Secretary of Corrections responsible for reviewing resident grievance appeals and personal injury claims from the correctional facilities statewide.

[85] *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (quoting *Jernigan*, 304 F.3d at 1032).

[86] *Id*.

## IV.    CONCLUSION

After fully considering the record on summary judgment, the Court concludes that Defendants' motion for summary judgment must be granted.  Defendants Barton and Hoag are entitled to summary judgment in their favor because Plaintiff failed to exhaust his available administrative remedies prior to filing suit.  This case is dismissed without prejudice.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 79) is **granted**.

**IT IS FURTHER ORDERED** that this case is **dismissed without prejudice.**

**IT IS SO ORDERED**.

**Dated June 16, 2026, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

16